**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 8, 2007**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DORIS A. RIGGS,

      Plaintiff - Appellant,

v.

AIRTRAN AIRWAYS, INC.,

      Defendant - Appellee.

No. 06-3250

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CV-1306-MLB)**

---

Lawrence W. Williamson, Jr., Shores, Williamson and Ohaebosim, L.L.C., Wichita, Kansas, for Plaintiff - Appellant.

Carolyn L. Matthews (and Jay F. Fowler, on the brief), Foulston, Siefkin, L.L.P., Wichita, Kansas, for Defendant - Appellee.

---

Before **KELLY**, **ANDERSON**, and **HENRY**, Circuit Judges.

---

**KELLY**, Circuit Judge.

Plaintiff-Appellant Doris Riggs appeals the district court's entry of summary judgment against her on her claim that Defendant-Appellee AirTran Airways, Inc., ("AirTran") terminated her in violation of the Age Discrimination

in Employment Act ("ADEA"), 29 U.S.C. § 621. The district court concluded that Ms. Riggs had failed to bring forth sufficient evidence to create a jury question as to whether AirTran's asserted nondiscriminatory reason for terminating her was actually a pretext for age discrimination. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm.

Background

AirTran employed Ms. Riggs as an at-will customer service agent in Wichita, Kansas from April 19, 2002 to June 19, 2003. Ms. Riggs's duties included working at the front ticket counter, the gate counter, and on the ramp loading and unloading luggage. Aplt. App. at 40. At the time of the incident leading to her termination, Ms. Riggs was 67 years old. Aplee. Supp. App. at 17.

Ms. Riggs was supervised by Gina Dolieslager, the manager of AirTran's Wichita station. Ms. Dolieslager was over forty years old at the time Ms. Riggs was terminated. Aplt. App. at 72. On two occasions prior to the termination, Ms. Dolieslager allegedly commented on Ms. Riggs's age. The first took place when Ms. Dolieslager discussed her mother's heart surgery, and Ms. Riggs revealed that she was the same age as Ms. Dolieslager's mother. Id. at 38. Ms. Dolieslager responded that Ms. Riggs did not look as old as she was. Id. Ms. Riggs did not take offense at the comment and did not feel the need to report the incident. Id. Subsequent to that exchange, Ms. Dolieslager assisted Ms. Riggs with luggage

and commented that Ms. Riggs was too old to be lifting heavy bags. Id. Although this comment embarrassed Ms. Riggs, she did not report the incident. Id. at 39. Additionally, Ms. Dolieslager complained about AirTran's seniority policy, under which Ms. Riggs was given seniority over other employees who had begun work on the same date because of her age. Id. at 233-34.

The events leading to Ms. Riggs's termination occurred on June 5, 2003. That morning, Ms. Riggs and four other AirTran employees–Tammy Spero-Mally, Judith Beddow, Paul Lawrence, and Jeff Baird–checked in a large group of children belonging to a Mennonite choir. Aplt. Br. at 3-4. After having checked in most of the group with some difficulty, Ms. Riggs was approached by a woman asking her to check in a girl who was running late. Ms. Riggs informed the woman that she was unable to check in passengers unless they were present. Id. at 4. The woman became upset, and her behavior frightened Ms. Riggs. Id.

Although Ms. Dolieslager was not present at the gate that morning, she learned about the choir's check-in later in the day when Mr. Baird told her he had been "embarrassed to be in an AirTran uniform" because he heard passengers discussing how rudely they had been treated by AirTran employees. Aplt. App. at 75, 229. Ms. Dolieslager then "talked to Doris, I talked to Tammy, I talked to Judi and asked them what the heck's going on." Id. at 75. According to Ms. Dolieslager, Ms. Beddow and Ms. Spero-Mally both stated that Ms. Riggs was "the one being rude," and Ms. Riggs admitted "well, I might have been a little

short with them . . . but those damn kids wanted all their seats switched around and I wasn't about to do that." Id. Ms. Riggs, however, only remembers telling her supervisor that "we had a rough time with this bunch, getting them on and getting them out." Id. at 228.

Four days later, Jessica Senn, the choir group's travel agent, sent an email to Bill Howard, AirTran National Sales Director, complaining about the way AirTran employees treated the group during check-in at the Wichita airport. Id. at 123-24. She wrote:

> The choir and myself are very upset with AirTran and the way we were treated upon check-in.
>
> * * *
>
> While beginning the check-in process at about 6:00 or 6:15 AM, two ladies appeared at the counter from the back room. One of the ticketing agents, Gina, was extremely rude and failed to be of good service to us. The other agent was rude, but not as bad as Gina - I do not have the other woman's name. She had long dark hair. Gina seemed to "ramrod" around and I even witnessed her snipping at the supervisor and telling him how things should be done. Gina then proceeded to yell at some of the passengers, pounded her hands on the counter and yelled "next" during the check in process before the other passengers could even step away from the counter and even went as far [as] to tell some of the children passengers that they can't get on this flight from Wichita to Atlanta. Obviously in the name of the group, Children's Choir, you can tell that the majority of the passengers were minors and they couldn't fly alone without an adult. Many of these kids had never flown before. Parents of the Children's Choir trusted the group leaders/chaperones with their kids on this trip.
>
> * * *

I being the travel agent am inclined to say that I will not sell Airtran ever again for groups. This group spent a lot of money for this trip and if this is how they'll be treated on AirTran, I DO NOT want any of my other groups to experience this. My clients deserve better.

* * *

We expect action to be taken immediately and something to be done about this situation.

Id.

When Ms. Dolieslager learned of the complaint on June 13, 2003, she contacted Ms. Senn to find out more about the employee identified as "Gina" because the only employee named Gina (Ms. Dolieslager herself) had not been working at the ticket counter that morning. Ms. Senn's description of "Gina" only fit Ms. Riggs. Id. at 76. Ms. Dolieslager then discussed the incident a second time with Ms. Beddow and Ms. Spero-Mally. She did not, however, discuss Ms. Senn's complaint with Ms. Riggs, who was on vacation at the time.

Ms. Dolieslager then spoke with Amy Morris, the manager of employee relations and diversity, and recommended that Ms. Riggs be terminated. According to Ms. Morris, a supervisor recommending termination should ensure that the complaining customer was being truthful and investigate the incident to accumulate all the facts before bringing the matter to her attention. Id. at 93-94. This investigation typically included obtaining the accused employee's side of the story. Id. at 93. Ms. Morris testified that she approved Ms. Riggs's termination for two reasons: (1) Ms. Riggs was rude to customers and (2) Ms. Riggs

- 5 -

impersonated her supervisor by saying that she was Gina. Id. at 90.

Ms. Riggs was informed of her termination when she returned to work from her vacation on June 19, 2003. A peer review panel subsequently upheld the termination decision. Ms. Riggs then filed suit against AirTran, alleging a violation of the ADEA, intentional infliction of emotional distress, and tortious interference with contractual relations. The district court dismissed the claim of intentional infliction of emotional distress, and Ms. Riggs withdrew her claim of tortious interference with contractual relations. The district court subsequently granted AirTran's motion for summary judgment, determining that Ms. Riggs failed to meet her burden of producing evidence sufficient to show that AirTran's proffered reason for the termination was pretextual.

## Discussion

We review the district court's grant of summary judgment de novo, applying the same standard used by the district court. Timmerman v. U.S. Bank, N.A., 483 F.3d 1106, 1112 (10th Cir. 2007). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In making this determination, we view the evidence in the light most favorable to Ms. Riggs, the non-moving party, and draw all reasonable inferences in her favor. Zamora v. Elite Logistics, Inc., 478 F.3d 1160, 1164 (10th Cir. 2007) (en banc).

Under the ADEA, an employer cannot "discharge any individual . . . because of such individual's age." See 29 U.S.C. § 623(a)(1). Thus, a plaintiff suing under the ADEA must prove that the challenged employment action was motivated, at least in part, by age. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000). The plaintiff may carry this burden either by presenting direct evidence of the employer's discriminatory intent or by presenting circumstantial evidence creating an inference of a discriminatory motive using the tripartite McDonnell Douglas burden-shifting analysis. See Danville v. Reg'l Lab Corp., 292 F.3d 1246, 1249 (10th Cir. 2002).

Under McDonnell Douglas, the plaintiff first bears the burden of proving a prima facie case of discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff successfully proves a prima facie case, the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action. Id. Once the employer identifies a legitimate reason for its action, the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination. See Reeves, 530 U.S. at 148. Of course, at the summary judgment stage, the parties bear burdens of production rather than burdens of persuasion. See Timmerman, 483 F.3d at 1113.

Ms. Riggs presses two contentions on appeal. First, she argues that the district court is not constitutionally permitted to determine whether other employees were "similarly situated" in conducting the pretext analysis on

summary judgment. Second, she contends that the evidence presented was sufficient to raise a genuine issue of material fact regarding whether she was terminated because of her age. We address each argument in turn.

I.

Ms. Riggs first urges us to reverse the grant of summary judgment because "the lower court here has stepped into the role of fact finder and violated [the] Seventh Amendment."[1] Aplt. Br. at 15. At bottom, she argues that "allowing judges in discrimination cases to make factual distinctions as to who is 'similarly situated' and whether alleged violations were close enough to a plaintiff's violations for the purposes of summary judgment is not constitutional." Id. Her argument begins with McDonnell Douglas itself, which she describes as an effort by the Supreme Court to make it easier for plaintiffs alleging discrimination to get their claims before the finder of fact. Id. at 19; see also Iadimarco v. Runyon, 190 F.3d 151, 161 (3d Cir. 1999) ("[T]he basic point of the McDonnell Douglas burden-shifting regime [is] to make it easier for employees to bring claims that would otherwise be extraordinarily difficult to prove."); E.E.O.C. v. G-K-G, Inc., 39 F.3d 740, 747 (7th Cir. 1994) (same). In her view, McDonnell Douglas was a case about "the order and allocation of proof in a private, non-class action challenging employment discrimination." Aplt. Br. at 20 (quoting McDonnell

---

[1] The Seventh Amendment provides in relevant part that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. Amend. VII.

Douglas, 411 U.S. at 800 (emphasis added)). Therefore, she argues, parties bear only a burden of production at the summary judgment stage; that is, they must merely come forward with some evidence which, if believed, would allow them to carry their burden of proof at trial.

However, Ms. Riggs contends that our precedent has not remained faithful to McDonnell Douglas: "As it stands, courts require a plaintiff to persuade a court that the plaintiff has proven pretext. This requires the court to weigh the facts." Id. at 22. "For instance, if a court, as the lower court here, chooses to believe a defendant's argument that the defendant can distinguish offenses or that other individuals are not similarly situated; [sic] the court's ruling violates the constitution . . . ." Id. at 27-28. In other words, Ms. Riggs contends that only the fact-finder may judge whether other employees were similarly situated.

As Ms. Riggs notes, McDonnell Douglas reviewed the district court's entry of judgment in favor of the defendant after trial. The Supreme Court ordered the case remanded so that "on the retrial respondent [can] be given a full and fair opportunity to demonstrate by competent evidence that the presumptively valid reasons for his rejection were in fact a coverup for a racially discriminatory decision." McDonnell Douglas, 411 U.S. at 805. Ms. Riggs is also correct that several subsequent applications of the McDonnell Douglas burden-shifting framework by the Supreme Court have followed full trials. See, e.g., Reeves, 530 U.S. 133; St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993); Patterson v.

McLean Credit Union, 491 U.S. 164 (1989); Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981).

However, this does not mean that McDonnell Douglas is inapplicable at the summary judgment stage. The summary judgment analysis is "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986) ("One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses . . . ."). In the employment discrimination context, there is no need for a trial if one party has failed to produce sufficient evidence to carry its burden of persuasion. It is therefore appropriate for a court to reference the burdens of proof articulated by McDonnell Douglas in determining whether the parties have come forward with sufficient evidence to make a trial necessary. See, e.g., Young v. Dillon Cos., 468 F.3d 1243, 1249 (10th Cir. 2006) ("Thus, all that remains before us is to decide whether a genuine issue of material fact exists as to whether Dillon's proffered reason for discharging Mr. Young was pretextual.") (emphasis added).

Our cases have sometimes used general terms like "establish" or "show" in

describing the burden of production (as the district court did here[2]) rather than specifically explaining that, at summary judgment, the nonmovant is only required to bring forth evidence <u>tending</u> to establish or show the material fact at issue. However, we have commonly used the word "proffer" in describing the defendant's obligation to produce evidence of a legitimate nondiscriminatory reason for the adverse action, <u>see</u> <u>Zamora</u>, 478 F.3d at 1165, and this word accurately describes the burden on the plaintiff at the summary judgment stage, as well; she must proffer some probative evidence that would be sufficient to sustain her burden of persuasion at trial, but she need not offer conclusive proof to the court in order to withstand summary judgment.

In an employment discrimination case, evidence of disparate treatment is

---

[2] The district court described its application of <u>McDonnell Douglas</u> as follows:

> Defendant has conceded for the purposes of this motion that plaintiff can <u>establish</u> a prima facie case. The burden then shifts to defendant to <u>establish</u> a legitimate reason for plaintiff's termination. Defendant has asserted that it terminated plaintiff for being rude to the choir group and impersonating her manager, Gina Dolieslager. The court <u>finds</u> that defendant has met its burden in <u>establishing</u> a legitimate nondiscriminatory reason. The burden now shifts back to plaintiff to <u>demonstrate</u> that defendant's reason is pretext for illegal discrimination.

R. Doc. 64, at 6 (emphasis added). Context matters, and it is clear to us that the district court understood that the parties merely bear burdens of production at the summary judgment stage. <u>See, e.g.</u>, <u>id.</u> at 9 ("Plaintiff may also establish pretext by <u>presenting evidence</u> of age-related comments to demonstrate that defendant's reason for termination was false.") (emphasis added).

- 11 -

only relevant if the plaintiff can show that he or she "was treated differently from other similarly-situated employees who violated work rules of comparable seriousness." Timmerman, 483 F.3d at 1120. Of course, at the summary judgment stage, the plaintiff need only produce evidence that similarly situated employees were treated differently. We have held that "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Aramburu v. Boeing Co., 112 F.3d 1398, 1404 (10th Cir. 1997).

Ms. Riggs contends that she carried her burden of production by offering evidence regarding disciplinary actions taken against six other employees who were supervised by Ms. Dolieslager. She argues that the district court's rejection of this evidence involved the impermissible factual determination that these were not "similarly situated" employees. However, we reject the premise of this argument–that the district court actually made a factual finding.

It is true that "[w]hether two employees are similarly situated ordinarily presents a question of fact for the jury." George v. Leavitt, 407 F.3d 405, 414 (D.C. Cir. 2005); see also Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000) (same). However, at summary judgment, the court must determine whether "plaintiff has adduced enough evidence to support a finding that the [other employee] and plaintiff were sufficiently similarly situated to support an inference of discrimination." Mandell v. County of Suffolk, 316 F.3d 368, 380

(2d Cir. 2003). Without such evidence, the jury is not entitled to draw an inference of discrimination. See E.E.O.C. v. Flasher Co., 986 F.2d 1312, 1319-20 (10th Cir. 1992). Thus, a motion for summary judgment in an employment discrimination case is no different from a motion for summary judgment in any other civil action: the court acts as a gatekeeper, granting judgment as a matter of law unless the plaintiff has adduced relevant and probative evidence sufficient to support a jury verdict in his or her favor. This does not require a factual finding, nor does it abridge the Seventh Amendment jury trial right. See Anderson, 477 U.S. at 250.

Accordingly, we reject Ms. Riggs's argument that the district court improperly weighed evidence in determining that other employees were not similarly situated. The district court was plainly allowed to make the determination that Ms. Riggs did not produce sufficient evidence of disparate treatment to create a genuine issue of material fact for trial. We address whether this determination was correct below.

## II.

Ms. Riggs next argues that the district court erred in concluding that she failed to come forth with sufficient evidence to create a genuine issue of material fact. She contends both that she produced sufficient direct evidence of discrimination to withstand AirTran's motion for summary judgment and that she produced sufficient circumstantial evidence to survive under the McDonnell

- 13 -

Douglas burden-shifting framework.  We disagree.

A.

"Direct evidence is evidence, which if believed, proves the existence of a fact in issue without inference or presumption."  Hall v. U.S. Dep't of Labor, 476 F.3d 847, 855 (10th Cir. 2007).  Stated differently, "[d]irect evidence demonstrates on its face that the employment decision was reached for discriminatory reasons."  Danville, 292 F.3d at 1249.  In contrast, "[s]tatements of personal opinion, even when reflecting personal bias or prejudice, do not constitute direct evidence of discrimination, but at most, are only circumstantial evidence of discrimination because the trier of fact must infer discriminatory intent from such statements."  Hall, 476 F.3d at 855.

Ms. Riggs argues that there is a causal nexus between the discovery of her age and the "adverse treatment" she received.  Aplt. Br. at 36.  She explains:

> Ms. Doleslager only began treating [Ms. Riggs] differently after learning of her age.  Additionally, Ms. Doleslager also began interfering with Ms. Riggs' duties after she learned of Ms. Riggs' age.  This goes beyond the mere statements of opinion.  Ms. Doleslager actually acted on her bias.

Id. (internal citations omitted).  As noted above, this "adverse treatment" consisted of the following: Ms. Doleslager noted on one occasion that Ms. Riggs was as old as her mother; Ms. Doleslager told Ms. Riggs at least once that she was too old to be moving heavy luggage; and Ms. Doleslager admittedly tried to

- 14 -

assign Ms. Riggs to work at the less-demanding gate rather than the ramp.[3] Id.

Although it is difficult to see this treatment as anything less than benevolent, at

the summary judgment stage we assume that it was unfavorable to Ms. Riggs.

Nevertheless, we fail to see a direct link between this treatment and the

termination decision. Notably, Ms. Riggs has failed to produce any evidence of

context, so we do not know when these events transpired or whether they have

any temporal proximity to the termination. Likewise, nothing in Ms.

Dolieslager's statements or actions relates Ms. Riggs's age to any dissatisfaction

with her work. In other words, the finder of fact would need to draw an inference

in order to determine that the outward manifestations of Ms. Dolieslager's alleged

age bias motivated her to terminate Ms. Riggs. Our precedent makes clear that

evidence is not "direct" if an inference of discrimination is required. See, e.g.,

Hall, 476 F.3d at 855 ("A statement that can plausibly be interpreted two different

ways–one discriminatory and the other benign–does not directly reflect illegal

animus, and, thus, does not constitute direct evidence.") (quoting Patten v. Wal-

Mart Stores E., Inc., 300 F.3d 21, 25 (1st Cir. 2002)). Therefore, we conclude

that Ms. Riggs did not produce sufficient direct evidence of discrimination to

withstand summary judgment.

_____

[3] Indeed, Ms. Dolieslager testified that Ms. Riggs asked not to work the ramp and "I didn't want to lose [Ms. Riggs] because she was good on gate. So I worked around it. I kept her off the ramp as much as I could . . . ." Aplt. App. at 264.

- 15 -

B.

Without direct evidence of age discrimination, Ms. Riggs's claim must rely on circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. AirTran concedes that Ms. Riggs can establish a prima facie case, and Ms. Riggs does not dispute that AirTran has articulated a legitimate, nondiscriminatory reason for terminating her. Thus, Ms. Riggs must produce evidence from which a reasonable jury could conclude that the reason given by AirTran was a pretext for age discrimination.

Pretext can be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." Rivera v. City & County of Denver, 365 F.3d 912, 925 (10th Cir. 2004). We do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them. Timmerman, 483 F.3d at 1120. "Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision." Piercy v. Maketa, 480 F.3d 1192, 1200 (10th Cir. 2007). Thus, we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment. Id. "The reason for this

rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." Dillon, 468 F.3d at 1250.

Evidence of pretext may take a variety of forms. See Patterson, 491 U.S. at 187; Kendrick, 220 F.3d at 1230. Ms. Riggs contends that she has met her burden of production by making four proffers of pretext. First, she argues that AirTran failed to follow its policies and customs, indicating that the termination decision was not made in good faith. Second, she argues that Ms. Dolieslager's use of subjective criteria in making the termination decision is indicative of pretext. Third, she contends that Ms. Dolieslager treated similarly situated employees differently. Finally, Ms. Riggs claims that inconsistencies and contradictions in documentation and testimony demonstrate pretext. Our task is to determine whether a reasonable jury could disbelieve AirTran's asserted reasons for terminating Ms. Riggs based on this evidence. See Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir. 1997).

1.

Ms. Riggs first points to evidence that Ms. Dolieslager did not follow company policy in terminating her. While there is no evidence that AirTran has a written policy against terminating an employee without seeking their response to a complaint, Ms. Morris testified that she would have done so under the circumstances in this case. Aplt. App. at 94. However, Ms. Dolieslager did speak

- 17 -

with Ms. Riggs–and several other employees–about difficulties with the choir group's check-in on the day that it occurred. Id. at 75, 83. Once she received Ms. Senn's complaint and learned the full extent of the group's dissatisfaction with the service it received, she did not further discuss the incident with Ms. Riggs because Ms. Riggs was on vacation and because Ms. Riggs was the only employee fitting Ms. Senn's description of "Gina." Aplee. Br. at 6. Although allowing Ms. Riggs to complete her side of the story would seem to be the most fair way of addressing the situation, we cannot say that Ms. Dolieslager's failure to do so in these circumstances constitutes a "disturbing procedural irregularity" sufficient to prove pretext. See Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1220 (10th Cir. 2002). There are certainly infractions warranting summary termination, but deciding whether this was one of them would require us to act as a super-personnel department, not a court. Regardless, this evidence does not suggest that AirTran's stated reasons for terminating Ms. Riggs were false.

In a similar vein, Ms. Riggs contends that it was company policy for the station manager to tell an employee that he or she was being terminated but that Ms. Dolieslager did not inform her of the termination. This is hardly a disturbing procedural irregularity, and we fail to see how it implicates the material issues in the case. Evidence about who informed Ms. Riggs of her termination is not probative of whether the reasons given for the termination were pretextual.

2.

Ms. Riggs next contends that the subjectivity Ms. Dolieslager had in deciding what information would be considered in making a termination decision is sufficient to support an inference of pretext. Aplt. Br. at 44. "Courts view with skepticism the use of subjective evaluations in making termination decisions." Plotke v. White, 405 F.3d 1092, 1106 (10th Cir. 2005); see also Garrett, 305 F.3d at 1217-18 (holding that subjectivity by the decisionmaker is relevant evidence of pretext). However, the existence of subjective criteria alone is not considered evidence of pretext; rather, the existence of other circumstantial evidence may provoke a stronger inference of discrimination in the context of subjective evaluation standards. See Pippin v. Burlington Res. Oil & Gas Co., 440 F.3d 1186, 1195 (10th Cir. 2006).

Here, Ms. Dolieslager had wide latitude in investigating Ms. Senn's complaint and determining which facts to provide to Ms. Morris in recommending Ms. Riggs's termination. Ms. Riggs contends that this subjectivity, coupled with the evidence of how Ms. Dolieslager treated Ms. Riggs after learning her age, is sufficiently indicative of pretext to survive summary judgment. Aplt. Br. at 44. However, we have recognized that there is a level of subjectivity inherent in any evaluation process. See Santana v. City & County of Denver, —F.3d—, 2007 WL 1502264, at *4 (10th Cir. 2007). The important question is not whether the investigation was highly structured but whether Ms. Dolieslager had unfettered

discretion in determining the appropriate punishment. Ms. Riggs has not come forward with evidence that other employees who committed similar offenses were not terminated, and she has not pointed to any evidence showing that Ms. Dolieslager deliberately withheld information from Ms. Morris or otherwise misrepresented her honestly held belief that Ms. Riggs was the employee identified as "Gina" by Ms. Senn. Thus, Ms. Riggs has not proffered evidence from which a jury could permissibly infer that Ms. Dolieslager used her latitude in investigating the customer complaint to act on her alleged age bias.

3.

Ms. Riggs next contends that AirTran treated her less favorably than other similarly situated employees. "Similarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." Timmerman, 483 F.3d at 1120 (quoting Aramburu, 112 F.3d at 1404). We have held that evidence that similarly situated employees received different treatment than the plaintiff is indicative of pretext. See, e.g., id.; Kendrick, 220 F.3d at 1230.

In opposing summary judgment, Ms. Riggs pointed to six AirTran employees who she claimed received more favorable treatment from Ms. Dolieslager than she did because they were allowed to respond to the allegations against them. The district court determined that three of these employees could not be similarly situated because they had not violated workplace rules of

comparable seriousness.  See Timmerman, 483 F.3d at 1121.  One, Eric Arndt, was terminated for using offensive language with his supervisor and failing to clock in and out.  Two others, Amy Tattershall and Michelle Hill, were terminated after they drove a company vehicle into a gate and lied to their supervisor about it.  Although all three were customer service agents younger than Ms. Riggs, the district court distinguished their terminations because their misconduct did not involve customers.  Regardless of whether the offenses committed by Mr. Arndt, Ms. Tattershall and Ms. Hill were "egregious and immediately terminable" as Ms. Riggs claims, see Aplt. Br. at 47, no evidence suggests that the employer considered these offenses to be as egregious as customer mistreatment.[4]

Ms. Riggs also alleges that Alicia Bulla is a similarly situated employee.  However, the record does not disclose any details about Ms. Bulla's behavior, nor does it indicate what discipline she ultimately received.  Ms. Beddow's hearsay statement that Ms. Bulla "would sometimes get a little rude and short with a passenger," see Aplt. App. at 293-94, is not sufficient to show that Ms. Bulla and Ms. Riggs were similarly situated.

Finally, Ms. Riggs notes that Ms. Dolieslager interviewed two of her

[4] Ms. Riggs contends that "Defendant did not identify rudeness to a customer as an egregious act that would warrant termination."  Aplt. Br. at 47.  However, she bears the burden of producing evidence that these employees were similarly situated, see Watts v. City of Norman, 270 F.3d 1288, 1293 (10th Cir. 2001), so AirTran's failure to counter her insufficient evidence is immaterial.

younger coworkers—Tammy Spero-Mally and Judith Beddow—regarding Ms. Senn's complaint. The district court concluded that these employees were not similarly situated because Ms. Dolieslager questioned them as witnesses, not suspects. Ms. Riggs contends that this ruling involved an impermissible weighing of the evidence, alleging that the record contains evidence from which a reasonable jury could conclude that these women were questioned as suspects. Aplt. Br. at 46-47. She supports this contention by citing her own testimony that Ms. Spero-Mally and Ms. Beddow told her that Ms. Dolieslager had asked them whether they identified themselves as "Gina." Aplt. App. at 232.

However, in that same testimony, Ms. Riggs admitted that she was not present during this conversation.[5] Id. Accordingly, her hearsay testimony is inadmissible "in support of, or opposition to, summary judgment." Starr v. Pearle Vision, Inc., 54 F.3d 1548, 1555 (10th Cir. 1995) (noting that "[o]ther circuits have held that a court may not consider hearsay evidence in depositions submitted to defeat summary judgment and the Supreme Court impliedly adheres to this rule"); see also Young, 468 F.3d at 1252 (statements revealing racial animus were not admissible in establishing pretext because they were made to other employees and subsequently conveyed, second-hand, to the plaintiff). With no admissible evidence that Ms. Spero-Mally and Ms. Beddow were interviewed as suspects, no

---

[5] Indeed, Ms. Beddow testified that she was never accused of impersonating the station manager. Aplt. App. at 291.

reasonable jury could conclude that they were similarly situated.

4.

Finally, Ms. Riggs claims that inconsistencies in testimony and documentation support the inference that AirTran's reasons for her termination were pretextual. Although Ms. Riggs does not directly identify which documents were improperly introduced or what testimony was inconsistent, see Aplt. Br. at 47, her argument apparently centers around three pieces of evidence: (1) a memorandum about her failure to attend a meeting regarding ramp safety; (2) Ms. Morris's testimony regarding whether she provided employee training; and (3) Ms. Dolieslager's testimony regarding whether she was responsible for addressing performance deficiencies. This evidence has no bearing whatsoever on the incident with the choir group or Ms. Dolieslager's belief that Ms. Riggs was the employee who identified herself as "Gina." Accordingly, this evidence is insufficient to create a jury question regarding pretext.

C.

Ms. Riggs also submits that the district court failed to consider the evidence as a whole in granting summary judgment. See Aplt. Br. at 39. Our review of the record satisfies us that the district court properly considered the evidence presented using the McDonnell Douglas framework. In any case, we have considered all of Ms. Riggs's contentions as a whole in our de novo review of the district court's grant of summary judgment, and we have concluded that

summary judgment was properly entered in favor of AirTran.

AFFIRMED.