**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 23, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JANETTE K. RAMSEY,

      Plaintiff-Appellant,

v.

LABETTE COUNTY MEDICAL
CENTER,

      Defendant-Appellee.

No. 07-3357
(D.C. No. 2:06-CV-02222-JPO)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **O'BRIEN**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

---

      Janette K. Ramsey appeals the district court's grant of summary judgment

in favor of her former employer, Labette County Medical Center (LCMC), in this

action under the Age Discrimination in Employment Act (ADEA). We have

jurisdiction under 28 U.S.C. § 1291. Because Ms. Ramsey has not proffered

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

evidence tending to show that LCMC's legitimate, nondiscriminatory reason for terminating her employment was a pretext for discrimination, we AFFIRM.

**I.**

Ms. Ramsey was born in 1953. In 1975, she began working for LCMC as a radiologic technologist. By 1998, she had been promoted to Director of Radiology (Diagnostic Imaging). As director, she oversaw several subdepartments, including X-ray, Mammography, Bone Densitometry, Computerized Tomography (CT), Magnetic Resonance Imaging (MRI), Nuclear Medicine, and Ultrasound.

In 2003, LCMC suffered a significant financial loss. The directors terminated the employment of the fifty-nine-year-old Chief Executive Officer (CEO), and in July 2004, they hired William Mahoney, then age thirty-nine, as the new CEO. According to Ms. Ramsey, Mr. Mahoney "walked in the door with kind of an intimidating factor," and she perceived him as being "the kind of person who shook things up." Aplee. Supp. App. at 14.

After Mr. Mahoney arrived, LCMC began terminating the employment of several long-term employees over age forty, including Ms. Ramsey's direct supervisor. Another employee, Janet Ball, was promoted to Vice President of Patient Care and Chief Nursing Officer, and she became Ms. Ramsey's supervisor. Ms. Ball is six years older than Ms. Ramsey.

Mr. Mahoney identified several changes he would like to see in the Radiology department.  For example, soon after he started, he suggested extending MRI's hours so that clients would not have to miss work to get an appointment.  Ms. Ramsey questioned the fiscal responsibility of such a move, but in February 2005, she extended MRI's hours.  He also raised concerns about securing a second nuclear medicine technologist so that the hospital did not have to use more costly traveling technologists.  In the fall of 2004, Ms. Ramsey hired a technologist who left soon after starting because of family health problems, and in May 2005 she hired another technologist.  But Mr. Mahoney had concerns about Ms. Ramsey.  Ms. Ball cautioned Ms. Ramsey that in Mr. Mahoney's opinion, "either you're on the boat with him or you're not," *id.* at 27, and told Ms. Ramsey that he perceived her as being hesitant and resistant.

On June 17, 2005, Ms. Ramsey met with Mr. Mahoney and Ms. Ball to go over Radiology's budget.  Ms. Ramsey surreptitiously recorded the meeting.  After reviewing budget matters, Mr. Mahoney also raised various concerns about her performance, including possible abuse of the hospital's callback system by Radiology employees; the need to be responsive to clients' needs, such as extending hours of service; possible favoritism by Ms. Ramsey and breaches of employee confidentiality; excessive socializing by Radiology employees; a hospital-wide perception that she was not in control of her department; and his perception that she was hesitant to his proposals and that she was digging in her

heels in response to suggested changes. In response to the last issue, Ms. Ramsey acknowledged that Ms. Ball had already raised the concern with her and that she had told Ms. Ball, "well, I can see where you would see that . . . . Or think that . . . ." *Id.* at 141; *see also id.* at 29 (Ms. Ramsey's deposition).

Several days later, Mr. Mahoney received a letter from a Radiology employee stating that Ms. Ramsey had met with her employees just three days after the June 17 meeting and "advis[ed] the entire team as to how to circumvent the directives given by the hospital administration regarding when to call out the on-call CT staff." *Id.* at 143. For Mr. Mahoney and Ms. Ball, this was the final incident. On July 8, LCMC terminated Ms. Ramsey's employment. Mr. Mahoney informed her that LCMC was restructuring her department and there was no place in the restructuring for her. Ms. Ramsey's duties were temporarily assigned to an employee three years older than she, and her permanent replacement was two years younger.

Ms. Ramsey filed an administrative charge of discrimination and eventually brought suit under the ADEA. LCMC moved for summary judgment. Applying the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973), the district court held that Ms. Ramsey established a prima facie case and that LCMC's proffer of evidence of dissatisfaction with her performance indicated a legitimate, nondiscriminatory reason for the termination. Concluding that Ms. Ramsey failed to proffer evidence tending to show that

LCMC's reason was a pretext for discrimination, however, the district court granted summary judgment to LCMC.

Ms. Ramsey appeals. Our review is de novo. *See Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). We apply the same legal standard as the district court, viewing the evidence in the light most favorable to Ms. Ramsey as the non-moving party. *See id.*

**II.**

Ms. Ramsey argues that the district court erred because it (1) did not recognize that LCMC's proffered reasons for the termination have shifted over time; (2) did not construe the facts and reasonable inferences in favor of her as the non-moving party, but instead construed them in favor of LCMC; and (3) failed to consider her evidence as a whole. LCMC contends not only that Ms. Ramsey failed to show pretext, but also that she failed even to establish a prima facie case. Because we conclude that Ms. Ramsey has not proffered evidence tending to establish that LCMC's proffered reason was a pretext for discrimination, we need not consider whether the district court erred in concluding that she established a prima facie case.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the

asserted non-discriminatory reasons." *Riggs*, 497 F.3d at 1118 (quotation omitted). "'The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.'" *Plotke v. White*, 405 F.3d 1092, 1102 (10th Cir. 2005) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). Evidence of pretext "'may take a variety of forms,'" including evidence tending to show "'that the defendant's stated reason for the adverse employment action was false.'" *Id.* (quoting *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (further quotation omitted)). "The plaintiff's evidence can also allow for an inference that the employer's proffered non-discriminatory reasons were either a *post hoc* fabrication or otherwise did not actually motivate the employment action . . . ." *Id.* at 1102-03 (quotation and alteration omitted).

### A.

Ms. Ramsey first argues that the district court failed to recognize that LCMC's reasons for the termination have shifted over time, which is evidence tending to show pretext. *See Whittington v. Nordam Group Inc.*, 429 F.3d 986, 994 (10th Cir. 2005) (holding that inconsistency in employer's reasons for the termination is an indication of pretext); *see also Plotke*, 405 F.3d at 1104 (holding that conflicting and changing evidence concerning the timing and reasons for termination contributes to a showing of pretext). Ms. Ramsey points out that

Mr. Mahoney initially told her that her department was being restructured. Then, in its response to the Equal Employment Opportunity Commission (EEOC), LCMC identified five reasons for the termination; in its response to Ms. Ramsey's interrogatories, it identified five slightly different reasons; and, finally, in his affidavit in support of LCMC's summary judgment motion, Mr. Mahoney identified eleven reasons for the termination.

We have carefully examined the documents Ms. Ramsey identified. As the district court found, although the specificity of LCMC's reasons differ, the reasons are not inconsistent. They explain why Mr. Mahoney was dissatisfied with Ms. Ramsey's performance, and thus, why he believed there was no place for Ms. Ramsey in a restructured Radiology department. Pretext is not shown if the employer does not give inconsistent reasons, but instead merely elaborates on the initial justification for termination. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1332 (11th Cir. 1998) (noting that later elaboration on more general reasons for termination is insufficient to show pretext); *Perfetti v. First Nat'l Bank*, 950 F.2d 449, 456 (7th Cir. 1991) (same). The asserted variances do not demonstrate that LCMC's proffered reasons are so weak, implausible, inconsistent, incoherent, or contradictory that a rational jury could find them unworthy of belief.

**B.**

Ms. Ramsey next contends that the district court construed the facts and the inferences therefrom in the light most favorable to LCMC, rather than to her as the non-moving party. She examines, and disputes, each of LCMC's eleven summary-judgment reasons for the termination.

In this type of inquiry,

> [w]e do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them. Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision. Thus, we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment. The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments.

*Riggs*, 497 F.3d at 1118-19 (citations and quotations omitted). Thus, evidence suggesting LCMC's reasons were inaccurate have no bearing on our analysis unless Ms. Ramsey can show that LCMC's agents knew of such inaccuracies at the time of the termination. Ms. Ramsey contends that her attack "on a point-by-point basis that the reasons were untrue" shows that Mr. Mahoney and Ms. Ball knew their reasons were inaccurate or shows that their expressed perceptions and beliefs were unreasonable. Aplt. Br. at 37.

-8-

While a plaintiff generally must proffer evidence tending to discredit each of an employer's multiple reasons for a termination, we have "recogniz[ed] that when the plaintiff casts substantial doubt on many of the employer's multiple reasons, the jury could reasonably find the employer lacks credibility." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000). We carefully have reviewed Ms. Ramsey's attacks on each of the eleven reasons and have given Ms. Ramsey the benefit of all facts and reasonable inferences therefrom. Although it appears that a couple of the reasons may be weak or ill-supported, we are not convinced that Ms. Ramsey has cast substantial doubt on many of LCMC's proffered reasons or that, on the whole, Mr. Mahoney and Ms. Ball did not honestly believe their criticisms of her performance. Ms. Ramsey has not established sufficient grounds on which the jury reasonably could infer pretext. We find no reversible error in the district court's decision that the evidence required granting summary judgment to LCMC.

## C.

Finally, Ms. Ramsey argues that the district court erred in not viewing all of her evidence as a whole and taking a "universal perspective." Aplt. Br. at 38. She contends that, if her evidence is viewed as a whole, she has proffered evidence sufficient for a reasonable factfinder to find pretext. In support, she points to certain age-related comments by hospital directors in connection with Mr. Mahoney's hiring; adverse employment actions taken against several

department directors who were older than forty-seven in the months following Mr. Mahoney's arrival; LCMC's failure to articulate several of its reasons for terminating her employment until the summary-judgment stage of this case; and Mr. Mahoney's and Ms. Ball's alleged knowledge that some of the reasons underlying her termination were false.

The district court discussed why this evidence did not amount to pretext. We conclude that the district court did not err in its analysis. Further, we have considered all of Ms. Ramsey's evidence as a whole as part of our de novo review, and we have concluded that the district court did not err in granting summary judgment to LCMC.

## III.

The judgment of the district court is AFFIRMED.

Entered for the Court

Wade Brorby
Senior Circuit Judge