**UNITED STATES COURT OF APPEALS**

**October 16, 2008**

**FOR THE TENTH CIRCUIT**

KENNETH E. COOPER,

               Plaintiff-Appellant,

v.

WAL-MART STORES, INC.,
a Delaware corporation,

               Defendant-Appellee.

No. 07-2290
(D.C. No. 1:06-cv-00468-JAP-RLP)
(D. N.M.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON,** and **BALDOCK**, Circuit Judges.

Kenneth E. Cooper appeals from the district court's grant of summary

judgment in favor of Wal-Mart Stores, Inc., on his claim of racial discrimination

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§ 2000e-2(a)(1). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Mr. Cooper, who is African American, became the manager of a Wal-Mart store in Silver City, New Mexico, in 1998. As the store manager, he was responsible for abiding by and enforcing all Wal-Mart policies, including avoiding situations and relationships that involve even the appearance of a conflict of interest, and rules against misappropriation of company funds. In September 2005, Wal-Mart's ethics hotline received an anonymous complaint regarding alleged misconduct by Mr. Cooper. Wal-Mart investigated the allegations, interviewing approximately 21 employees and examining dozens of pages of documents. The lead investigator drafted a summary of findings, concluding that the allegations of harassment, inappropriate conduct, misappropriation of company funds, and conflict of interest were substantiated.

Specifically, the investigation found that Mr. Cooper violated several Wal-Mart policies in connection with a trip beginning on June 23, 2005, to tour the company's distribution center in Buckeye, Arizona. First, he was the only member of management accompanying an otherwise all-female group of hourly employees on the overnight trip, circumstances that Wal-Mart concluded were a violation of its conflict of interest policy. Second, instead of returning to Silver City on June 24 with the rest of the group, Mr. Cooper and several other employees went shopping and spent an additional night in Tucson, Arizona, before returning home on June 25. Mr. Cooper charged to Wal-Mart the cost of

-2-

meals and the hotel rooms for the extra night, and he allowed the employees who did not return to Silver City on June 24 to claim eight working hours on their time sheets for that day.

In addition, the investigation also found substantial evidence that Mr. Cooper was engaging in an inappropriate relationship with and directing favoritism toward a department manager, Ms. Quintana, specifically:

- Visiting her home several times, for up to 30 minutes;
- Awarding her a $250 gift card;
- Putting items on layaway for her in his name;
- Increasing her pay substantially more than any other department manager; and
- Offering to remove a disciplinary action from another employee's file if she agreed not to tell anyone that she saw Mr. Cooper leaving Ms. Quintana's neighborhood.

The investigation concluded further that Mr. Cooper threatened employees with retaliation if they reported information to his supervisor, Mr. Andrade, or to the company's loss-prevention supervisor; that he made inappropriate, sexually suggestive comments during store meetings; that he ordered the demotion of an employee without following the Wal-Mart disciplinary process; that he awarded $25 gift cards to employees who danced with him at a company party; and that he direct-billed Wal-Mart for his wife's stay at a hotel in Silver City.

The investigators provided their findings and documentation to Michael Moore, Senior Vice President, Operations West of Wal-Mart. Mr. Moore was responsible for all aspects of store operations in his district, including personnel

-3-

issues. He reviewed the investigation and concluded that it had been conducted properly. According to his affidavit, he believed that the findings were accurate and true, and he made the decision to terminate Mr. Cooper's employment for gross misconduct. He did not seek a statement from Mr. Cooper before reaching his decision.

At Mr. Moore's direction, Mr. Andrade met with Mr. Cooper, informed him that he was being terminated for gross misconduct, and reviewed with him written bullet points summarizing the specific reasons for his termination. Mr. Andrade also presented Mr. Cooper with an Exit Interview form indicating that the reason for his termination was "Gross Misconduct - Integrity Issue," which was defined on the form to include "Misappropriation of Company Assets." Aplt. App. at 149. Mr. Cooper wrote a response indicating his disagreement with each of the reasons given and he signed the Exit Interview form, indicating his denial of all allegations of misconduct.

Mr. Cooper used Wal-Mart's Open Door policy to express his disagreement with the bases for his termination. He also reported allegations of misconduct against other Wal-Mart employees, including several store managers. In response, Wal-Mart conducted an investigation involving numerous investigators, interviews of dozens of associates, and examination of hundreds of pages of documents. Once again, the investigators provided their findings and documentation to Mr. Moore.

-4-

Two of the other store managers were not disciplined because the investigators determined that the allegations against them could not be substantiated. But they concluded that some of the allegations against three other store managers were substantiated. One manager had given gifts to Mr. Andrade and to another employee. The investigators also found that this manager socialized with Mr. Andrade and that employees were reluctant to use the Open Door policy because of his perceived friendship with his supervisor. The record does not reflect whether or how this store manager was disciplined based on these findings. The investigators concluded that two allegations against a second store manager were substantiated, but had been previously addressed by Wal-Mart. Finally, the investigators found that six allegations against a third store manager were substantiated, including four allegations related to inappropriate conduct and favoritism toward female associates, as well as two allegations regarding his failure to maintain password and keyword control. Mr. Moore concluded that these were serious violations of Wal-Mart policy, but that this store manager's conduct was not as recent or severe as Mr. Cooper's conduct and involved fewer substantiated allegations. This third store manager was demoted two steps to assistant manager, but was later promoted back to store manager.

Mr. Cooper filed this action in district court, asserting that his termination was motivated by racial discrimination.[1] The district court granted summary judgment in favor of Wal-Mart, concluding that Mr. Cooper failed to raise a genuine issue of fact whether Wal-Mart's proffered non-discriminatory reasons were pretextual. Mr. Cooper filed a timely appeal.

### *Standard of Review*

"We review the district court's grant of summary judgment de novo." *Young v. Dillon Cos.*, 468 F.3d 1243, 1249 (10th Cir. 2006). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and draw all reasonable inferences from the record in favor of the non-moving party." *Young*, 468 F.3d at 1249.

### *Discussion*

Mr. Cooper did not present direct evidence of racial discrimination, so we examine his claim under the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Young*, 468 F.3d at 1249. Under that framework, Mr. Cooper carried the initial burden of

---

[1] Mr. Cooper asserted other claims in his complaint, which are not at issue in this appeal.

establishing a prima facie case of racial discrimination.  *See id.*  Wal-Mart

concedes that Mr. Cooper made out a prima facie case of discrimination under

Title VII.  "Once the plaintiff establishes a prima facie case, the burden shifts to

the employer to articulate some legitimate, non-discriminatory reason for the

adverse employment action.  If the defendant makes this showing, the burden then

shifts back to the plaintiff to show that the defendant's proffered justification is

pretextual."  *Id.* (citation omitted).  Mr. Cooper does not contend that Wal-Mart

failed to meet its burden to articulate a legitimate, non-discriminatory reason for

his termination.  Thus, the issue before this court is whether plaintiff has shown a

genuine issue of material fact as to whether Wal-Mart's proffered reasons for

discharging Mr. Cooper were a pretext for discrimination.  *See id.*

### *Pretext*

"Pretext exists when an employer does not honestly represent its reasons

for terminating an employee."  *Miller v. Eby Realty Group LLC*, 396 F.3d 1105,

1111 (10th Cir. 2005).  "To show that the defendant's proffered race-neutral

reasons were actually a pretext for discrimination, this Court has held that the

plaintiff must demonstrate that the defendant's proffered race-neutral reasons

were so incoherent, weak, inconsistent, or contradictory that a rational factfinder

could conclude the reasons were unworthy of belief."  *Young*, 468 F.3d at 1250

(quotation and brackets omitted).  "The relevant inquiry is not whether the

employer's proffered reasons were wise, fair or correct, but whether it honestly

believed those reasons and acted in good faith upon those beliefs." *Rivera v. City & County of Denver*, 365 F.3d 912, 924-25 (10th Cir. 2004) (quotation and brackets omitted); *see also Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1206 (10th Cir. 2000) ("The pertinent question in determining pretext is not whether the employer was right to think the employee engaged in misconduct, but whether that belief was genuine or pretextual." (quotation and brackets omitted)). "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Young*, 468 F.3d at 1250.

Because there seems to be some confusion on plaintiff's part,[2] we note that, although intermediate evidentiary burdens shift back and forth under the *McDonnell Douglas* framework, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1173 (10th Cir. 2007) (quotation and alteration omitted). Thus, Mr. Cooper bears the burden to produce evidence at the pretext phase sufficient to support an inference of discrimination. *See id.*

---

[2]     In his appeal brief Mr. Cooper refers to Wal-Mart's failure to meet its burden of showing good faith.

Mr. Cooper attempts to show pretext in three different ways: (1) with evidence that Wal-Mart's stated reasons for his termination were false, *see Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000); (2) with evidence that Wal-Mart treated him differently than similarly situated employees whose policy violations were of comparable seriousness, *see Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007); and (3) with evidence of procedural irregularities in Wal-Mart's investigation, *see id.* at 1122.

### *Evidence of Falsity of Wal-Mart's Proffered Reasons for Termination*

Mr. Cooper contends that he presented sufficient evidence disputing the facts underlying Wal-Mart's findings regarding his misconduct, such that there exist material issues of fact regarding whether Wal-Mart honestly believed those reasons and acted in good faith upon that belief. "The Supreme Court has recognized that 'in appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" *Young*, 468 F.3d at 1250 (brackets omitted) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000)). "But the nature and quantum of plaintiff's proof is key, for the Supreme Court has also explained that evidence about the falsity of an employer's proffered race-neutral explanation for termination will not *always* be adequate to sustain

liability." *Id.* (quotation and ellipsis omitted). Thus, the plaintiff's evidence must be both relevant to the issue of pretext, and sufficient to raise a substantial doubt about the veracity of the employer's reasons.

Mr. Cooper contends that he has shown material issues of fact in dispute with respect to each and every reason Wal-Mart proffered for his termination. The district court concluded that he failed to dispute the facts underlying Wal-Mart's finding that he misappropriated company funds in connection with the trip to Buckeye, Arizona. It also suggested that this was Wal-Mart's dominant reason for terminating Mr. Cooper. *See* Aplt. App. at 189 (stating that he failed to "dispute what is arguably the most significant of Defendant's findings involving misappropriation of funds–the payment of hotel and meal expenses incurred during the unauthorized trip to Tucson"). We agree.

First, Mr. Cooper does not dispute the facts found in Wal-Mart's investigation regarding this incident.[3] Instead, he contends that his supervisor, Mr. Andrade, authorized the Buckeye trip. But he fails to show that the aspects of the trip to which Wal-Mart objected–the shopping outing recorded as work

---

[3]     Mr. Cooper's testimony regarding the events is consistent with Wal-Mart's findings. Although he asserted in the district court that the evidence showed the employees appropriately recorded a flat eight hours on their time sheets for June 24 for the driving time associated with the return trip from Buckeye, whether or not they actually drove home on that day, this is a mischaracterization of his own testimony. He stated that the time spent by the employees who chose to travel back home on June 24 was considered work time, but he admitted that his group did not spend any time that day returning to Silver City. *See* Aplt. App. at 134.

-10-

time, the extra meals, and the extra night's stay in Tucson–were authorized. He

presents no evidence disputing Mr. Andrade's testimony that he was never

informed about Mr. Cooper and other employees staying an additional night on

the Buckeye trip.

Nor does Mr. Cooper present any evidence that his misappropriation of

funds in connection with the Buckeye trip was not a dominant–if not the most

dominant–issue in Wal-Mart's decision to terminate his employment.[4] The

relative importance of an employer's multiple reasons for the adverse action must

enter into our analysis, because "[t]he pretext inquiry about whether a plaintiff

raises substantial doubt about a number of the employer's reasons is not limited to

just a numeric quantitative assessment of the proffered reasons, but also includes

a qualitative assessment that takes into account which reasons dominated the

employer's decision making process." *Bryant v. Farmers Ins. Exch.*, 432 F.3d

1114, 1127 n.6 (10th Cir. 2005) (quotation and brackets omitted). Thus, when a

plaintiff casts doubt on the dominant reason for termination put forth by the

employer, his failure to address other, less consequential reasons does not entitle

the employer to summary judgment. *Id.* at 1126-27. On the other hand, if the

employer offers one reason which, standing alone, would have caused it to

---

[4]     The record shows that Mr. Cooper was terminated for gross misconduct, which includes misappropriation of company assets. And the dollar amount misappropriated in connection with the Buckeye trip far exceeded the other allegations of misappropriation of funds.

terminate the plaintiff, then debunking the employer's other reasons will not defeat summary judgment. *See Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005). Mr. Cooper does not contend that this reason for his termination was intertwined with the other reasons proffered by Wal-Mart. Thus, his failure to debunk a dominant, stand-alone reason for Wal-Mart's decision to terminate his employment supports the district court's grant of summary judgment. *See id.*

Mr. Cooper argues that summary judgment is nonetheless unavailable to Wal-Mart for two reasons. First he contends that he has raised substantial doubt about many of Wal-Mart's numerous reasons for terminating him. *See Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 814 (10th Cir. 2000) (holding an inference of pretext may be drawn "when the plaintiff casts substantial doubt on many of the employer's multiple reasons, [such that] the jury could reasonably find the employer lacks credibility"). Second, he argues that "the pretextual character of one explanation is so fishy and suspicious, that a jury could find that the employer (or its decision-maker) lacks all credibility." *Jaramillo*, 427 F.3d at 1310 (citation and quotation omitted). As to both contentions, we disagree.

Mr. Cooper was required to show "that the evidence of [his] misconduct presented to [Mr. Moore] was so implausible, incoherent, or internally contradictory that [Mr. Moore] must have made his decision on some other basis."

*Rivera*, 365 F.3d at 925.[5]  According to the materials submitted to Mr. Moore, the Wal-Mart investigators made their findings regarding Mr. Cooper's verbal threats of retaliation, his sexually suggestive comments, and his inappropriate offer to remove a disciplinary action from an employee's file, based upon witnesses's statements as to what he said and did.  In response, he simply denies that he ever made the verbal threats, the offer, and some of the comments.  And while he admits to making other remarks, he asserts that they must have been misconstrued because he did not intend them to be sexually suggestive, two employees testified they did not interpret the statements in that manner and were not offended by them, and Mr. Andrade had not received any complaints.

These conflicts in the evidence fail to create an inference that Mr. Moore's articulated motivating reasons were a pretext for discrimination.  This is so because "conflicting evidence only affects summary judgment if it is relevant to the inquiry."  *Piercy v. Maketa*, 480 F.3d 1192, 1201 (10th Cir. 2007) (holding that, despite conflicting versions of what occurred leading up to plaintiff's termination, she failed to show a reason to believe that her employer's proffered reason for termination masked a retaliatory motive).  "Perhaps a reasonable

---

[5]      We note at the outset that Mr. Cooper fails to even address on appeal several of Wal-Mart's misconduct findings.  He does not mention in his opening appellate brief the all-female aspect of the Buckeye trip, his visits to Ms. Quintana's home, or his placement of an item on layaway for her.  Nor does he address Wal-Mart's finding that he told assistant managers it was none of their business who he was seeing outside of the store.

factfinder could observe all the witnesses and believe Plaintiff's version of the events . . . . [but] that is not the issue. What is at issue is whether the evidence of Plaintiff's misconduct presented to [Mr. Moore] was so weak that a rational factfinder could infer that [Mr. Moore's] expressed reason for terminating Plaintiff must have been pretextual." *Rivera*, 365 F.3d at 925. Mr. Cooper's denials and his disagreement with Wal-Mart's conclusions that certain remarks were sexually suggestive fail to support an inference of pretext.

Wal-Mart also cited as a reason for Mr. Cooper's termination that he ordered the demotion of an employee without following the company's disciplinary process. There is no dispute that, without following that process, Mr. Cooper decided to remove an employee from her position in the cash office and reassign her to a sales clerk/cashier position. He contends, however, that there is a factual dispute whether the employee was actually demoted and that the disciplinary procedures only come into play if the action taken was disciplinary in nature. But he admits that the basis for the employee's "reassignment" was because she had been rude to employees and was divulging confidential information about payday loans. Moreover, Wal-Mart noted in its investigative findings that Mr. Cooper's co-manager–the person who carried out the reassignment at his direction–characterized it as a demotion. We conclude that Mr. Cooper has failed to show sufficient weakness in the evidence presented to Mr. Moore regarding this issue to allow a factfinder to infer pretext.

-14-

Similarly, Mr. Cooper denies that he dictated a letter posted in the cash office that threatened to fire or "re-arrange" anyone who provided information to his superiors before going to him first. Aplt. App. at 95. Mr. Moore was presented with evidence that Mr. Cooper was aware of this letter and intended to enforce the admonitions in it.[6] Thus, a dispute regarding whether Mr. Cooper dictated the letter is insufficient to support an inference of pretext.

Mr. Cooper also attempts to debunk two of Wal-Mart's findings of improper favoritism related to Ms. Quintana. He contends that he did not exceed his discretion as the store manager in raising her salary, and that his award of a $250 gift card to her was not a violation of the conflict of interest policy because it was approved by Mr. Andrade. These arguments ignore Wal-Mart's concern not only with actual conflicts of interest, but also with the appearance of a conflict created by the instances of favorable treatment of and fraternization with Ms. Quintana. Thus, regardless of his authority to do so, Wal-Mart concluded that Mr. Cooper's decision to raise her salary significantly more than any other department manager was a real or apparent conflict of interest. Likewise, Mr. Andrade's assent to his request to award Ms. Quintana the gift card is not relevant in the absence of evidence that Mr. Cooper disclosed to his supervisor

---

[6] Wal-Mart's investigative findings included a statement from a witness that, when Mr. Cooper asked her whether she had seen the letter, she responded, "Yes, I saw your threat," and he replied, "It's not a threat, it's a promise." Aplt. App. at 86 (quotations omitted).

the full extent of his fraternization with her. Moreover, despite Mr. Cooper's assertion that the gift card was an appropriate award for Ms. Quintana's disclosure of a potential fraud scheme by another employee, the investigators presented Mr. Moore with evidence that she had no involvement in that investigation. Again, he has not shown that the evidence Mr. Moore relied on was so weak as to create an inference of pretext. *See Rivera*, 365 F.3d at 925.

Mr. Cooper also attempts to show that there is relevant conflicting evidence regarding Wal-Mart's two other findings that he misappropriated company funds. He does not deny giving out $25 gift cards to employees at a holiday party, but he contends that Wal-Mart's finding of misconduct was mistaken because the cards were actually awarded to employees who participated in a line dance. He points to a witness's testimony supporting his position that it was a "group thing," rather than one-on-one dancing with him. Aplt. App. at 125. But Wal-Mart's investigative finding did not state that he was dancing one-on-one with the gift card recipients and he does not deny that he participated in the dancing. *See id.* (same witness testifying that "everybody was dancing"). Thus, he has not shown any factual dispute regarding this finding of misconduct.

Finally, Mr. Cooper asserts that Wal-Mart's finding that he direct-billed the cost of his wife's hotel room to the company is not only wrong, but "so fishy and suspicious" that it casts doubt on all of the other reasons for his termination, and a jury could therefore reasonably find that Wal-Mart lacks all credibility.

-16-

*Jaramillo*, 427 F.3d at 1310 (quotation omitted). We agree with Mr. Cooper that, based on the record before us, he has shown a substantial weakness in the evidence presented to Mr. Moore on this issue. He points to testimony that he gave cash to another Wal-Mart employee who paid for the hotel room.[7] On the other hand, Wal-Mart's investigative findings state only that Mr. Cooper "direct billed" Wal-Mart for the cost of the hotel room, *id.* at 66, 85, without any indication in the record what that conclusion means, what it is based upon, or whether any evidence was presented to Mr. Moore to support it. Wal-Mart does not even address this reason for Mr. Cooper's termination in its appeal brief.

We cannot conclude, however, that the pretextual character of this one reason for Mr. Cooper's termination is sufficient to undermine the veracity of the numerous other reasons proffered by Wal-Mart, which remain uncontested. With no evidence that Mr. Moore's true motivation was racial, no reasonable jury could infer solely from the uncertainty whether this one reason was real or phony, that the true motivation for Mr. Cooper's termination was indeed his race. *See Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995). Moreover, having failed to

---

[7]    The district court dismissed this evidence based on the witness's suggestion that the money had come from the Wal-Mart cash office, but there is no such suggestion in the testimony. The witness simply answered "No" when asked if Mr. Cooper ever indicated that the money had been taken from a Wal-Mart account. Aplt. App. at 126.

cast substantial doubt on many of Wal-Mart's reasons, Mr. Cooper has failed to show pretext on that basis.  *See Tyler*, 232 F.3d at 814.

### Evidence that Similarly Situated Employees Were Treated Differently

A plaintiff may show pretext "by providing evidence that he was treated differently from other similarly-situated, nonprotected employees who violated work rules of comparable seriousness."  *Kendrick*, 220 F.3d at 1232.  Wal-Mart conducted an investigation in response to the allegations Mr. Cooper made against other store managers in the Open Door complaint he submitted following his termination.  He argues that four other store managers, all of whom are Hispanic, were charged with similar misconduct, but received less-severe discipline.  He asserts that the evidence of disparate treatment supports an inference that Wal-Mart's reasons for terminating him were a pretext for discrimination.

The parties do not dispute that these other store managers reported to the same supervisor and were subject to the same standards of performance and discipline as Mr. Cooper.  *See id.*  But Wal-Mart contends that he has failed to proffer evidence showing that their violations of work rules were of comparable seriousness to his violations.  "This is crucial because in order to infer that the disparate treatment of two similarly situated employees was tinged with discriminatory animus, the two employees' violations of company policy must be of comparable seriousness."  *Timmerman*, 483 F.3d at 1121.  Mr. Cooper "bears

the burden of producing evidence that these employees were similarly situated."

*Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1121 n.4 (10th Cir. 2007).

Although Mr. Cooper focuses on the allegations of misconduct against the other employees, the relevant evidence pertains to Wal-Mart's findings of violations and resulting discipline. At best, the undisputed evidence in the record shows findings of misconduct by the other store managers that were both less severe and less frequent than Mr. Cooper's misconduct. None of the four had as many findings of misconduct against them as Mr. Cooper did.[8] And none of the allegations substantiated against the other store managers involved offenses as serious as misappropriation of company funds.[9]

Mr. Cooper protests that the degree of severity of misconduct is always a question for the jury, but we have upheld summary judgment where a plaintiff's pretext argument based on disparate discipline fails to present evidence of a violation of comparable severity. *See, e.g., Timmerman*, 483 F.3d at 1121 (noting plaintiff failed to establish that other employees' violations were as frequent and

---

[8]    Mr. Cooper contends that, like him, one other store manager "was charged with a litany of misconduct," which he characterizes as "similar to claims Wal-Mart is making against Cooper." Aplt. Opening Br. at 31-32. But the record indicates that only six of seventeen allegations against this store manager were substantiated.

[9]    Although Mr. Cooper asserts that another store manager "was also accused of misconduct involving misappropriation, similar to claims made against [him]," Aplt. Opening Br. at 31, he fails to support this contention with a citation to the record. Nor did our review of the record reveal evidence of a finding of misappropriation of company funds involving this other store manager.

involved a comparable dollar amount as her own misconduct); *Kendrick*, 220 F.3d at 1232 (holding plaintiff failed to show pretext based on disparate discipline because physical pushing of a superior constituted a violation of greater severity than verbal abuse by other employees).

Furthermore, we rejected the same argument in *Riggs*, 497 F3d at 1116-17. We acknowledged that, "at the summary judgment stage, the plaintiff need only *produce* evidence that similarly situated employees were treated differently." *Id.* at 1117. But we rejected the plaintiff's premise that the district court must have made improper factual findings in support of its determination that other employees were not similarly situated, concluding that "[t]he district court was plainly allowed to *make the determination* that Ms. Riggs did not produce sufficient evidence of disparate treatment to create a genuine issue of material fact for trial." *Id.* Thus, we upheld the district court's distinction between the plaintiff's misconduct involving customers and the other employees' offenses, noting that she proffered no evidence suggesting that the employer considered the other offenses to be as egregious as hers. *Id.* at 1120-21.

We reach the same conclusion here. Mr. Cooper has not proffered evidence of violations by other store managers' violations of comparable seriousness to his own misconduct sufficient to carry his burden of persuasion in showing pretext based on Wal-Mart's disparate discipline of similarly situated employees.

### Evidence of Procedural Irregularities
### in Wal-Mart's Investigation

Mr. Cooper's final contention is that Wal-Mart's failure to seek his response to the allegations of misconduct, and its failure to interview additional employees in its investigation, are sufficient procedural irregularities to show that its reasons for terminating him were a pretext for discrimination. "We have previously held that disturbing procedural irregularities surrounding an adverse employment action may demonstrate that an employer's proffered nondiscriminatory business reason is pretextual." *Timmerman*, 483 F.3d at 1122. But "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (quotation and ellipsis omitted).

In order to establish pretext based on a procedural irregularity, a plaintiff must identify an applicable written or unwritten policy or procedure that the employer failed to follow. *See id.* (noting plaintiff pointed to no written policy and no evidence of an unwritten specific approach to progressive discipline); *Jaramillo*, 427 F.3d at 1312-13 (holding failure to administer examination that was not required "is not a procedural irregularity"). Here there is no dispute that Wal-Mart did not seek out Mr. Cooper's side of the story before Mr. Moore

decided to terminate him.[10] Mr. Cooper asserts that three policies required

Wal-Mart to do so: the Open Door policy, the Respect for the Individual policy,

and Wal-Mart's progressive discipline policy called "The Coaching For

Improvement Process." Aplt. App. at 168. Mr. Cooper fails to point us to the

text of either of the first two policies in the record, and unlike the district court,

we will not assume that he correctly characterizes their requirements in his

argument.

Mr. Cooper does not dispute that, under Wal-Mart's progressive discipline

policy, it could terminate him immediately for gross misconduct, without

applying step discipline. But he contends that the Coaching for Improvement

policy required Wal-Mart to obtain his statement before determining whether he

engaged in gross misconduct. One of the "Guidelines for Administering the

Coaching for Improvement Process" is to "Discuss the situation with the

Associate to get their side and any additional facts." *Id.* at 169. But as Wal-Mart

notes, the policy also states that "Associates who are deemed to have engaged in

Gross Misconduct are subject to immediate termination. This is not part of the

---

[10]     Wal-Mart argues that Mr. Cooper was given ample opportunity to give his statement *after* his termination and that Mr. Moore considered that statement, as evidenced by the further investigation conducted. But there is no indication in Mr. Moore's affidavit that he reviewed Mr. Cooper's post-termination responses to the misconduct allegations with an eye toward potentially reevaluating his prior decision, and the subsequent investigation focused solely on Mr. Cooper's allegations against other employees.

Coaching for Improvement process." *Id.* at 170. We agree with the district court that the guideline to seek out the employee's side of the story appears to apply to all investigations, "as the determination of whether the misconduct is 'gross' does not occur until after the step allowing the employee to provide input." *Id.* at 193. But plaintiff failed to present any evidence that Wal-Mart believed its policy mandated getting his side of the story before he was terminated. *See* Aplt. Opening Br. at 29 (reciting Wal-Mart's explanation that it did not get a statement from him because the violations were so numerous he could not possibly rebut every one). We have held that, if the decision makers did not believe that a rigid policy existed, their mistake in failing to follow it does not show pretext. *See Berry*, 490 F.3d at 1222.

Moreover, Mr. Cooper ignores that the standard for establishing pretext requires evidence of not just any procedural shortfall, but of a "disturbing procedural irregularity," *Timmerman*, 483 F.3d at 1122, often exemplified by an employer's "falsifying or manipulating of relevant criteria," *Plotke v. White*, 405 F.3d 1092, 1104 (10th Cir. 2005) (quotation and brackets omitted). In *Plotke* we held that the plaintiff's evidence supported an inference that her employer had fabricated a memo after the fact to support its decision to terminate her, raising a genuine doubt about the employer's motivation. *Id.* at 1104-05.

In contrast, on facts similar to those presented here, we concluded that an employer's a failure to follow its normal investigative practice of seeking out the

-23-

employee's side of the story was insufficient to suggest that its reasons for terminating the plaintiff were false. In *Riggs* the employer admitted that an investigation of misconduct typically included obtaining a statement from the employee, 497 F.3d at 1114, but the employer failed to do so before terminating Ms. Riggs, *id.* at 1119. Her supervisor explained that, after receiving a customer complaint, she did not discuss the issue further with Ms. Riggs because the plaintiff was on vacation at the time and the customer's description of the employee involved in the misconduct fit only the plaintiff. *Id.* We concluded that, "[a]lthough allowing Ms. Riggs to complete her side of the story would seem to be the most fair way of addressing the situation, we cannot say that [her supervisor's] failure to do so in these circumstances constitutes a disturbing procedural irregularity sufficient to prove pretext." *Id.* (quotation omitted). We reach the same conclusion here: Mr. Cooper has not proffered evidence of a disturbing procedural irregularity based upon Wal-Mart's failure to get his side of the story before deciding to terminate him.

Finally, Mr. Cooper argues that Wal-Mart's investigation was biased because, out of over 400 employees, it chose to interview only those few who could corroborate the allegations against him. He contends this demonstrates that Wal-Mart's proffered reasons for his termination were a pretext for discrimination. The record shows that Wal-Mart interviewed approximately 21 employees in its investigation, including Ms. Quintana and Mr. Cooper's

co-manager, both of whom were also terminated.  Although Mr. Cooper asserts

that "[s]ignificant employees who could or would dispute the claims were

apparently not interviewed," Aplt. Opening Br. at 27, he fails to identify a single

additional witness or present any evidence that the witnesses Wal-Mart

interviewed were biased.  Nor does he identify any policy, written or unwritten,

that required Wal-Mart to interview more or different witnesses.  Thus, he fails to

carry his burden to present evidence of a disturbing procedural irregularity based

on the witnesses that Wal-Mart interviewed, or failed to interview, in its

investigation.[11]

### *Conclusion*

Although Mr. Cooper did not have a burden to establish conclusively at the

summary judgment stage whether Wal-Mart's stated reasons for his termination

were pretextual, he "was required to establish that there is a genuine factual

dispute with regard to the truth." *Swackhammer*, 493 F.3d at 1170 (quotation

omitted).  That genuine factual dispute must relate to whether Mr. Moore "acted

in good faith upon the beliefs he held." *Id.*  Viewed in the light most favorable to

plaintiff's position, the evidence in the record does not call into question whether

Mr. Moore or Wal-Mart actually relied, honestly and in good faith, upon the

---

[11]     In light of our previous conclusions, we also reject Mr. Cooper's assertion that his evidence of procedural irregularities, when considered in combination with his other evidence, is sufficient to show pretext.

misconduct findings in the investigation in making the decision to terminate

Mr. Cooper's employment. *See id.*

      The judgment of the district court is AFFIRMED.


           Entered for the Court


           Bobby R. Baldock
           Circuit Judge