**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 12, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MARK E. BROWN,

        Plaintiff-Appellant,

v.

No. 05-3378

UNIFIED SCHOOL DISTRICT 501,
TOPEKA PUBLIC SCHOOLS,

        Defendant-Appellee.

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 04-CV-1193-DWB)**

---

Submitted on the briefs:

Larry G. Michel, Chris J. Kellogg, Kennedy, Berkley, Yarnevich, & Williamson, Chtd., Salina, Kansas, for Plaintiff-Appellant.

David P. Mudrick, Thomas E. Wright, Allison M. Kenkel, Wright, Henson, Clark, Hutton, Mudrick & Gragson, L.L.P., Topeka, Kansas, for Defendant-Appellee.

---

Before **HARTZ**, **ANDERSON**, and **TYMKOVICH**, Circuit Judges.

---

**ANDERSON**, Circuit Judge.

---

Plaintiff, a former teacher/coach in the defendant school district, appeals from an order of the magistrate judge[1] granting summary judgment for the school district and dismissing his employment discrimination action as untimely. On de novo review, *see Boyer v. Cordant Technologies, Inc.*, 316 F.3d 1137, 1138 (10th Cir. 2003), we affirm for the reasons discussed below.[2]

Plaintiff is a black male who was employed by the school district from 1980 to 1996 as a physical education teacher and, for some of that time, as a basketball coach. During that period, he received a number of critical teacher evaluations, was transferred from coaching girls' basketball based on a report of inappropriate conduct, and was discharged as a boys' coach due to performance issues. He sued the school district for race discrimination and retaliation in 1991. The suit failed and he was ordered to pay attorney fees. He continued teaching in the school district until 1996, when he relocated to Texas.

He later returned to Kansas and on June 20, 2000, submitted an application for teaching and coaching jobs to the school district. The school district's human resources manager, Lynn King, interviewed plaintiff in August 2001. After the interview, Ms. King sent a letter to plaintiff relating the superintendent's decision

---

[1] The parties consented to disposition of the case by a magistrate judge pursuant to 28 U.S.C. § 636(c).

[2] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

that, due to his past employment record with the school district, he "will not be considered for rehire by this district." Appellant's Appendix (App.) I at 124. The letter concluded with this clarifying admonition: "This letter should end any uncertainty regarding your status with the [school district]." *Id.* While plaintiff questioned the basis for the decision, he admitted that "after receiving this [letter]" he "knew that they were saying they w[ould] not hire [him]." App. II at 285 (Brown deposition pages 130, 132).

In March 2002, plaintiff filed an EEOC charge over the school district's refusal to rehire him. *See* App. II at 321. He did not, however, pursue the matter upon receipt of a right-to-sue letter in April 2002. *See id.* at 320.

Plaintiff continued an aggressive correspondence with the school district over his unsuccessful application, but the school district did not relent. As the district court noted, plaintiff was repeatedly told that he would not be considered for re-employment by the school district. *See, e.g.*, *id.* at 437, 438. A letter sent by Ms. King to plaintiff in January 2003 concluded by saying: "I don't know what additional words to use to make the point more clear, you will not be rehired by the school district." *Id.* at 438.

Finally, on May 23, 2003, Ms. King sent plaintiff the letter that became the basis of a second EEOC charge and, ultimately, this case. *See id.* at 311 (EEOC charge citing May 23 letter); *id.* at 511 n.4 (district court order noting plaintiff's reliance on May 23 letter as only discrete act of discrimination); *see also* Br. of

Aplt. at 8-9. In the letter, she reiterated the school district's refusal to consider plaintiff for any position and directed him to "re-read the volume of previous responses to you on the subject of your rehire by the school district." *Id.* at 439. Plaintiff filed his associated charge with the EEOC on August 1, 2003. He was sent a right-to-sue letter on March 31, 2004, *id.* at 312, and filed this action on June 18, 2004, asserting claims of race discrimination under 42 U.S.C. § 1981 and race discrimination and retaliation under Title VII.

## Untimeliness of Title VII Claims

There are two limitations provisions that together fix the time frame for bringing suit under Title VII. First, the claimant must timely seek administrative relief. "In a deferral state such as Kansas, a Title VII claimant must file his discrimination charge within 300 days of the alleged unlawful act." *Peterson v. City of Wichita*, 888 F.2d 1307, 1308 (10th Cir. 1989) (applying 42 U.S.C. § 2000e-5(e)(1)); *see also Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183 & n.1 (10th Cir. 2003). Second, the claimant must timely pursue legal action upon conclusion of the administrative proceedings. "Under 42 U.S.C. § 2000e-5(f)(1) a complainant has ninety days in which to file suit after receipt of an EEOC right-to-sue letter." *Witt v. Roadway Express*, 136 F.3d 1424, 1429 (10th Cir. 1998). If the claimant fails to file suit within the ninety-day window, the lapsed claims are not revived by including them in a second EEOC charge and restarting the process. *See, e.g., Spears v. Mo. Dep't of Corr. & Human Res.*, 210 F.3d 850,

853 (8th Cir. 2000); *Soso Liang Lo v. Pan Am. World Airways, Inc.*, 787 F.2d 827, 828 (2d Cir. 1986); *Price v. Greenspan*, 374 F. Supp. 2d 177, 184 (D.D.C. 2005).

Plaintiff's administrative charge and subsequent suit based on the school district's May 23, 2003 letter facially satisfied the time limitations summarized above. However, the district court noted that the letter simply restated the school district's unconditional decision, first related to plaintiff in August 2001, refusing to consider him for rehire in light of his past employment record. Thus, relying on the non-revival rule cited above, the district court held that the operative limitations period commenced and expired long before this action was filed. Plaintiff challenges that decision, arguing that the May 23, 2003 letter was a discrete act of discrimination/retaliation actionable independently of the school district's prior refusal to rehire him.

The circumstances and briefing in this case suggest two polarized positions, neither of which, in its extreme form, seems fully satisfactory: (1) an employer may unilaterally impose a once-and-for-all condition on a claimant's right to seek redress for discrimination in hiring (or promotion, etc.) that could ultimately involve the denial, over an extended time period, of multiple job opportunities, versus (2) the claimant can perpetually revive an otherwise expired claim of discrimination by repeatedly applying for additional positions. We need not choose between these stark alternatives here, however, as the particular claim

pursued by plaintiff falls in the middle ground between them. Before explaining our resolution of this case, we review some pertinent background principles that are clearly established in the case law.

First, "[e]ach discriminatory act starts a new clock for filing charges alleging that act." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). Thus, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.*

Second, in determining when the limitation period commences, "the proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) (quotation omitted). Thus, when an initial discriminatory act is time-barred, a later related event is not actionable if it is merely a consequence of the first; to be actionable, the later event must involve an independent act of discrimination (which in certain circumstances may be inherent in the event, but otherwise requires explicit supporting allegations). *Compare id.* at 257-58 (holding claim time-barred because alleged discrimination occurred when plaintiff was denied tenure, not when he was later terminated as a result) *with Bazemore v. Friday*, 478 U.S. 385, 394-97 & n.6 (1986) (holding disparate-pay claim timely, despite genesis of disparity in segregation long since abandoned, because "[e]ach week's paycheck that delivers less to a black than to a similarly situated white is [inherently] a wrong actionable under Title VII").

In the same vein, a time-barred act cannot supply the requisite discriminatory animus for an otherwise neutral act within the limitations period. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 557-58 (1977) (rejecting claim by rehired employee for allegedly wrongful denial of seniority for years spent outside workforce following resignation under admittedly discriminatory marriage prohibition, because seniority scheme was facially neutral and discrimination associated with resignation was outside limitations period).

Complementing the above two principles is a third that is especially pertinent here. While a time-barred discriminatory act will not *make actionable* (or be made actionable by) its later facially neutral consequences, such an act will not *preclude an action* for subsequent related acts that would support suit on their own. "The existence of past acts and the employer's prior knowledge of their occurrence . . . does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed." *Morgan*, 536 U.S. at 113. The Supreme Court's decision in *Bazemore*, noted above, illustrates this point in holding pay disparities based on race actionable (with each pay check) even though they were related to historical segregation practices not subject to suit.

Plaintiff contends that his case falls within the scope of this last principle. Based on his administrative charge and the pleadings and pretrial order herein, we disagree. Plaintiff did not assert and offer a supporting factual basis for a

claim that the school district's letter of May 23, 2003 reflected an independent act of discrimination/retaliation in hiring. Neither the charge, complaint, nor pretrial order referred to any position that plaintiff had applied for and been denied, for prohibited reasons, by that letter. *See* App. I at 11, 29, 126. Rather, consistent with its content, which just referred back to past correspondence, the letter was alleged to be wrongful because it reflected a continuation of the district's previously stated refusal to consider plaintiff for work based on his employment history. *Id*. To the extent this broadly stated decision was itself actionable, distinct from any independently discriminatory/retaliatory refusal to rehire plaintiff for a particular job, the time for suit had clearly expired and, under the authority discussed above, was not revived by plaintiff's repeated attempts to revisit the matter.

None of the arguments advanced by plaintiff overcome this basic deficiency in his case. In particular, he contends that his copious correspondence with the school district over the broad decision it made in 2001 should be deemed a series of discrete job applications and that the school district's reaffirmations of that decision should be deemed a series of discrete (and independently discriminatory or retaliatory) decisions denying each application, the last of which, the letter of May 23, 2003, would not be time-barred. But that is simply not the charge he pursued administratively and the claim he pled in the district court, which fix the scope of the case properly before us. Those remedial efforts were directed at the

school district's broad decision in August 2001 *as reaffirmed, in equally broad terms, in May 2003*, not at any particular, independently discriminatory hiring decision.

Thus, as noted earlier, we have no occasion to decide whether the school district's once-and-for-all refusal to consider plaintiff for employment established a single immutable accrual date for all failure-to-hire claims or, conversely, that the intended effect of the unconditional refusal was rendered meaningless by subsequent application(s) for employment that it was intended to foreclose. We hold only that an employer's mere reiteration of a broad decision not to consider an applicant for any employment does not revive expired objections regarding its initial statement of that decision.

## Untimeliness of § 1981 Claim

The forum state's statute of limitations for personal injury actions governs civil rights claims under both 42 U.S.C. § 1981 and § 1983. *Scheerer v. Rose State Coll.*, 950 F.2d 661, 664 (10th Cir. 1991) (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-62 (1987), for § 1981,[3] and *Wilson v. Garcia*, 471 U.S. 261, 276-80 (1985), *superseded by statute on other grounds, as stated in Jones v.*

---

[3]     We note that 28 U.S.C. § 1658 now provides a federal four-year limitations period for statutory causes of action created after December 31, 1990, but this provision has no application to discrimination claims under § 1981 involving the formation of employment contracts (i.e., failure to hire), which were actionable before the specified date. *Cross v. The Home Depot*, 390 F.3d 1283, 1288 (10th Cir. 2004).

*R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377-78 (2004), for § 1983).  In Kansas, that is the two-year statute of limitations in Kan. Stat. Ann. § 60-513(a). *Hamilton v. City of Overland Park*, 730 F.2d 613, 614 (10th Cir. 1984) (en banc).

Here, that two-year period, like the Title VII limitations period, does not reach back to the August 27, 2001 letter first stating the school district's refusal to consider plaintiff for rehire, but does cover the May 23, 2003 letter reiterating that position.  Thus, as the district court tacitly held and both parties explicitly concede, the limitations issue under § 1981 clearly turns on the same accrual analysis controlling our disposition of the Title VII claims.  *See* Br. of Aplt. at 13; Br. of Aplee. at 26.  Accordingly, for the reasons explained above in connection with the latter, we also hold that plaintiff's § 1981 claim was properly dismissed as time-barred.

The judgment of the district court is AFFIRMED.