FILED
United States Court of Appeals
Tenth Circuit

February 1, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

MARK E. BROWN,

        Plaintiff-Appellant,

v.

UNIFIED SCHOOL DISTRICT
NO. 501, SHAWNEE COUNTY,
STATE OF KANSAS,

        Defendant-Appellee.

No. 11-3170
(D.C. No. 6:10-CV-01096-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **MURPHY**, and **HOLMES**, Circuit Judges.

Mark E. Brown appeals the district court's grant of summary judgment to

his former employer, Unified School District No. 501 ("School District") on his

race-discrimination and retaliation claims brought under Title VII, 42 U.S.C.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§§ 2000e to 2000e-17.[1]  We exercise jurisdiction under 28 U.S.C. § 1291 and

affirm.

## Background

Mr. Brown alleged that the School District refused to rehire him due to his

race.  In a prior appeal, this court described the underlying facts.

> Plaintiff is a black male who was employed by the school
> district from 1980 to 1996 as a physical education teacher and, for
> some of that time, as a basketball coach.  During that period, he
> received a number of critical teacher evaluations, was transferred
> from coaching girls' basketball based on a report of inappropriate
> conduct, and was discharged as a boys' coach due to performance
> issues.  He sued the school district for race discrimination and
> retaliation in 1991.  The suit failed and he was ordered to pay
> attorney fees.  [*Brown v. Unified Sch. Dist. 501*, No. 94-3319,
> 1995 WL 590605 (10th Cir. 1995) (unpublished) ("*Brown I*")].
> He continued teaching in the school district until 1996, when he
> relocated to Texas.
>
> He later returned to Kansas and on June 20, 2000, submitted an
> application for teaching and coaching jobs to the school district.  The
> school district's human resources manager, Lynn King, interviewed
> plaintiff in August 2001.  After the interview, Ms. King sent a letter
> to plaintiff relating the superintendent's decision that, due to his past
> employment record with the school district, he "will not be
> considered for rehire by this district."

*Brown v. Unified Sch. Dist. 501*, 465 F.3d 1184, 1185 (10th Cir. 2006) (internal

quotation marks and brackets omitted) ("*Brown II*").  *Brown II* determined that

Mr. Brown's claims were time-barred because he failed to file suit within the

statutory time limit after the alleged discriminatory failure to rehire and, further,

---

[1]     Mr. Brown has abandoned his claims brought under 42 U.S.C. § 1981.

that his subsequent attempts to revisit those claims did not revive them. *Id.* at 1188.

In the summer and fall of 2009, Mr. Brown applied for three positions with the School District: head coach, substitute teacher, and special education teacher. He claimed that in June 2009, while they were both at a local YMCA, a high school principal, Dale Cushinberry, told him that he would hire Mr. Brown as head coach if the current coach left. Although Mr. Brown later complained that he was denied an assistant coach position, it is undisputed that he did not apply for the assistant coach position. Mr. Brown was invited to meet with the substitute services coordinator on October 2, 2009. Mr. Brown did not meet with the coordinator, however, because he was then already working as a substitute teacher for another school district. School Board Member Janel Johnson reported to Mr. Brown that Board Member Nusbaum commented during a September 17, 2009, Board meeting, that "All [Mr. Brown] wants to do is sue us." *See* Aplt. App. Vol. 2 at 458. Ms. Johnson also told Mr. Brown that at an October 1, 2009, Board meeting the attorney for the Board, David P. Mudrick, advised the Board that the School District might face liability if Mr. Brown were hired and a sexual incident occurred between a student and Mr. Brown. On October 6, 2009, Mr. Brown's attorney received notice from the School District that Mr. Brown would not be considered for any position.

Mr. Brown filed the underlying lawsuit on March 31, 2010, alleging that the School District's refusal to hire him for three separate positions in the summer and fall of 2009 was based on his race, in violation of Title VII. The district court granted the School District's motion for summary judgment on the following grounds: (1) Mr. Brown's claims were time-barred because they were premised on the School District's policy announced in 2001 that it would not rehire him; (2) Mr. Brown's claims were subject to dismissal pursuant to the doctrines of res judicata and collateral estoppel due to the preclusive effect of *Brown II*; (3) even if Mr. Brown had established a prima facie case of racial discrimination, he failed to demonstrate that the School District's proffered nondiscriminatory reason for not rehiring him was a pretext for unlawful discrimination; and (4) Mr. Brown failed to establish a prima facie case of retaliation because he did not present any admissible evidence that his prior protected activity was causally related to the School District's decision not to rehire him. Mr. Brown appeals.

## Legal Standards

We review the district court's summary judgment order de novo, applying the same legal standards as the district court. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a). Pursuant to this standard, "we must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Swackhammer*, 493 F.3d at 1167 (internal quotation marks omitted). "The purpose of a summary judgment motion is to assess whether a trial is necessary. In other words, there must be evidence on which the jury could reasonably find for the plaintiff." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (citation omitted) (internal quotation marks omitted). "Because our review is de novo, we need not separately address [Mr. Brown's] argument that the district court erred by viewing evidence in the light most favorable to the [School District] and by treating disputed issues of fact as undisputed." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

The district court granted summary judgment on alternative grounds. We affirm the determinations that Mr. Brown failed to establish pretext for his racial discrimination claim and that he failed to establish a prima facie case of unlawful retaliation. "We may affirm the district court's grant of summary judgment on any ground adequately supported by the record." *Mauerhan v. Wagner Corp.*, 649 F.3d 1180, 1184 (10th Cir. 2011) (internal quotation marks omitted).

## Discussion

### (1) Race Discrimination Claim

Title VII makes it unlawful for an employer "to fail or refuse to hire . . . any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). We evaluate Mr. Brown's claim under the three-step *McDonnell Douglas* framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). Under this framework, the plaintiff must first establish a prima facie case of discrimination. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1114 (10th Cir. 2007). If the plaintiff does so, the employer "must articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* If this is done, "the burden shifts back to the employee to prove that the proffered legitimate reason was a pretext for discrimination." *Id.* at 1114-15. These burdens are burdens of production, rather than persuasion, at the summary judgment stage. *Id.* at 1115.

With regard to the pretext inquiry, a plaintiff can withstand summary judgment if he or she presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reason for the adverse employment action is pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-49 (2000). Pretext may be shown by "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the

-6-

employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Rivera*, 365 F.3d at 925 (internal quotation marks omitted).

This case turns on whether the School District's decision not to rehire Mr. Brown was a pretext for racial discrimination. Mr. Brown contends that the following evidence demonstrated pretext: (1) the School District retained him as an employee from 1980 to 1996, and his performance reviews during that period included positive statements; (2) his 2001 meeting with the School District's human resources manager, Lynn King, demonstrated Ms. King's view that he was a "worthy candidate," Aplt. Br. at 38; (3) Principal Cushinberry's 2009 comment that he would hire Mr. Brown for a head coaching position indicated that Mr. Brown was eligible for rehire; (4) the substitute services coordinator's invitation to meet demonstrated that "certain members of the district felt [Mr. Brown's] qualifications were sufficient for rehire," *id.* at 39; (5) Robert McFrazier, a School District superintendent who made the decision in 2001 not to rehire Mr. Brown, did not consult Mr. Brown's personnel file before making the decision, which itself was unusual because superintendents normally were not involved in such decisions; (6) Mr. Brown was improperly required to go through the formal job-application process, while some employees were hired outside the process, as evidenced by a 1987 newspaper article and his own opinion;

(7) between 1999 and 2009, the School District hired numerous white female teachers and few African-American teachers; (8) other employees who were "convicted of crimes," *id.* at 45, were not discharged and still others were rehired even though they had been terminated for misconduct; (9) the School District had a fear of litigation and acted upon that fear when it refused to rehire Mr. Brown; and (10) the remarks allegedly made at school board meetings about Mr. Brown wanting to sue and his being a risk demonstrated discriminatory and retaliatory motives.

Mr. Brown does not dispute the district court's finding that Kevin Singer was the 2009 decisionmaker who refused to change the School District's 2001 decision not to rehire him. In his unchallenged affidavit, Dr. Singer stated that he had reviewed Mr. Brown's file in September 2009, and noted "many negative documents about Mr. Brown's performance from several different sources." Aplt. App. Vol. 1 at 430. Dr. Singer also made inquiries to ascertain whether other information was available to cause him to change the prior decision, but he received no such information. The decision not to rehire Mr. Brown was made solely by Dr. Singer, not the school board or any of its members. Dr. Singer stated that although he was aware of Mr. Brown's prior lawsuits, neither those lawsuits nor Mr. Brown's race affected his decision not to rehire him.

Accordingly, Mr. Brown's reliance on statements made by Human Resources Manager King, Principal Cushinberry, Superintendent McFrazier, and

the substitute services coordinator, is misplaced. He has adduced no evidence that any of those individuals participated in, or indeed had authority to participate in, the decision to not rehire Mr. Brown. Moreover, Mr. Brown has not attempted to controvert Dr. Singer's affidavit; rather, he contends that his evidence demonstrates that Dr. Singer should have recognized that he was qualified for employment, especially since he had received some positive performance reviews during his employment from 1980 to 1996 and he had not been fired. But the court's role "is to prevent intentional discriminatory . . . practices, not to act as a super personnel department, second guessing employers' honestly held (even if erroneous) business judgments." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (internal quotation marks omitted). We conclude that this evidence does not show pretext.

Mr. Brown also asserts that the fact that he was required to go through the formal job-application process while others were not, demonstrates pretext. This claim, however, is not supported by competent evidence. His own opinion and a vague reference to "two people" he believed were hired by a coach, Aplt. App. Vol. 2 at 600, and a 1987 newspaper article apparently describing the hiring of a coach, are insufficient to raise a genuine dispute of material fact regarding whether the School District's articulated reason for the adverse employment action is pretextual. *See Reeves*, 530 U.S. at 147-49.

Turning to Mr. Brown's statistical evidence of the gender and race of teachers the School District hired between 1999 and 2009, we agree with the district court that this evidence "is meaningless without any additional information as to how many persons from different races applied for each position." Aplt. App. Vol. 2 at 824. *See Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1147 (10th Cir. 2009) (holding plaintiff's statistical evidence failed to create a genuine issue of material fact on the issue of gender discrimination because it did not account for numerous relevant variables, such as "the number of male and female applicants, interviewees, and the like"). Similarly, the district court correctly rejected Mr. Brown's claim that other employees who had been convicted of crimes or discharged for misconduct were not terminated, thus showing pretext, because he "fail[ed] to show the existence of any racial disparity in [the School District's] treatment of employees accused of harassment." Aplt. App. Vol. 2 at 825.

Finally, we consider Mr. Brown's claim that the remarks allegedly made at school board meetings to the effect that he wanted to sue the School District and was a risk were evidence of pretext. The district court ruled that neither remark was admissible. "We review a district court's ruling on the admissibility of evidence for an abuse of discretion." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005).

-10-

The court ruled that the remark that the School District might face liability if a sexual incident occurred between a student and Mr. Brown was legal advice from the Board's attorney and thus was protected by the attorney-client privilege. Mr. Brown does not challenge this ruling. The other remark was allegedly made by Board Member Nusbaum and repeated to Mr. Brown by Board Member Johnson. Mr. Brown contends that it was a statement of a party opponent so was not hearsay. However, neither Dr. Nusbaum nor Ms. Johnson was "involved in the decisionmaking process affecting the employment action involved," so the statement does not "qualify as an admission of a party opponent." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1314 (10th Cir. 2005). Therefore, the district court did not abuse its discretion in ruling that Ms. Johnson's report of Dr. Nusbaum's alleged statement was inadmissible hearsay. "Hearsay testimony that would not be admissible at trial is not sufficient to defeat a motion for summary judgment." *Id.*

We conclude that Mr. Brown failed to establish that the School District's proffered legitimate, nondiscriminatory reasons for refusing to rehire him were pretextual. Accordingly, the district court properly granted summary judgment on the race-discrimination claim.

## (2) Retaliation Claim

Title VII's anti-retaliation provision "forbids an employer from 'discriminat[ing] against' an employee . . . because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). To state a prima facie case of discriminatory retaliation, a plaintiff must show "(1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Twigg v. Hawker Beechcraft Corp.*, 659 F.3d 987, 998 (10th Cir. 2011) (internal quotation marks omitted).[2]

The disputed element is causation. Mr. Brown points to the statements discussed above allegedly made at school board meetings and the School District's "strong fear of litigation," Aplt. Br. at 54. The board-meeting statements are inadmissible, as discussed above. Particularly when those statements are put aside, any claimed fear of litigation on the School District's part is pure speculation by Mr. Brown. "[M]ore than pure speculation is required

---

[2]    A plaintiff may alternatively establish retaliation if he can "directly establish that retaliation played a motivating part in the employment decision." *Twigg*, 659 F.3d at 998.

to defeat a motion for summary judgment." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010) (internal quotation marks omitted).  Mr. Brown's failure to establish a causal connection between his protected activity and an adverse employment action was fatal to his retaliation claim.

    The judgment of the district court is AFFIRMED.

Entered for the Court


Jerome A. Holmes
Circuit Judge