**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 23, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MARK E. BROWN,

    Plaintiff - Appellant,

v.

UNIFIED SCHOOL DISTRICT NO. 501,

    Defendant - Appellee.

No. 19-3252
(D.C. No. 2:17-CV-02390-HLT)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HOLMES**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

Mark E. Brown appeals the district court's grant of summary judgment to the

Unified School District No. 501 on his discrimination and retaliation claims brought

under Title VII, 42 U.S.C. §§ 2000e to 2000e-17.  He also appeals the denial of his

motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e).

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the district court's

judgment.

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. BACKGROUND

A. *Factual History*

This is the fourth appeal we have considered between these parties. Their history reaches back to 1982, when Mr. Brown, who is African-American, began working for the school district. He resigned in 1996. During his tenure, Mr. Brown received several poor performance evaluations. And in 1989, he was investigated and removed from his position as the girls basketball coach for making sexually inappropriate comments to students. Although he was reassigned to be an assistant coach for the boys basketball team, he was removed from that position as well due to performance issues.

Based on his transfer to the assistant coaching position and his removal from that job, Mr. Brown brought his first lawsuit against the school district in 1991, claiming race discrimination and retaliation. That suit resulted in an adverse judgment against him. *See Brown v. Unified Sch. Dist. No. 501*, No. 91-4011-R, 1992 WL 105096, at *3 (D. Kan. Apr. 28, 1992). We later affirmed the denial of his motion for a new trial. *See Brown v. Unified Sch. Dist. No. 501*, No. 94-3319, 1995 WL 590605, at *3 (10th Cir. Oct. 6, 1995). Mr. Brown continued working for the school district until he resigned in 1996.

In 2000, Mr. Brown reapplied for a position with the school district. Andrea Lynn King, then the human resources director, interviewed him. After the interview, Ms. King informed Mr. Brown by letter dated August 27, 2001, that the then-superintendent, Dr. Robert McFrazier, decided that, "due to [his] past employment

record with [the school district], he would not be considered for rehire." Aplt. App.,
Vol. 1 at 37 ¶ 22 (italics and internal quotation marks omitted); *see also id.* at 107
(Brown Depo.); *id.* at 203 (letter).

Notwithstanding this decision, Mr. Brown continued to ask Ms. King about
employment opportunities within the school district. She repeatedly informed him in
2002 and 2003, through at least three separate letters, that he was not eligible for
reemployment with the school district because of his employment record. Thus, in
2004, Mr. Brown brought a second suit against the school district alleging
discriminatory failure-to-rehire and retaliation. We affirmed the grant of summary
judgment to the school district on timeliness grounds. *See Brown v. Unified Sch.
Dist. 501*, 465 F.3d 1184, 1188 (10th Cir. 2006).

Mr. Brown continued to apply for teaching positions until he filed a third
lawsuit against the school district in 2009. He claimed the refusal to rehire him was
based on his race and retaliation for bringing the previous lawsuits. Once again, we
affirmed summary judgment in favor of the school district. *See Brown v. Unified
Sch. Dist. No. 501*, 459 F. App'x 705, 711 (10th Cir. 2012).

In 2016, Mr. Brown applied again for teaching positions. This time he was
interviewed for two positions. First, the special education director, Dr. Jennifer
Harrington, interviewed him for a position as a special education teacher. Second, a
recruiter for the school district, Ruth Marstall, interviewed him for a position as a
substitute teacher. Neither Dr. Harrington nor Ms. Marstall knew about Mr. Brown's
history with the school district, and he did not inform them he was ineligible for

3

employment.  Dr. Harrington selected another African-American candidate for the special education position.  Ms. Marstall passed along Mr. Brown's credentials for further consideration, though he was later informed that he would not be offered a position.

Mr. Brown asked to meet with the school district's superintendent, Dr. Tiffany Anderson.  Dr. Anderson forwarded Mr. Brown's request for a meeting to the current human resources director, Carla Nolan.  Ms. King, her predecessor, informed her that Mr. Brown was ineligible for rehire.  In turn, Ms. Nolan told Mr. Brown that he was still ineligible for rehire for performance reasons.  Mr. Brown then filed this action in the district court.

B.  *Legal Proceedings*

In his complaint, Mr. Brown claimed under Title VII that the school district's refusal to rehire him was discrimination based on race and retaliation for bringing his original lawsuit in 1991.[1]  The district court granted summary judgment to the school district on both claims.  First, the court concluded that although Mr. Brown established a prima facie case of discrimination, the school district proffered a legitimate, non-discriminatory reason for refusing to rehire him—his employment

---

[1] Mr. Brown failed to include a copy of the complaint with his appellate appendix.  We have examined the complaint retained by the district court, which indicates he also asserted claims under 42 U.S.C. § 1981 and Kansas state law, though as reflected in the district court's pretrial order, he abandoned all but the Title VII claims.  We caution Mr. Brown that "an appellant who provides an inadequate record does so at his own peril," *Burnett v. Sw. Bell Tel., L.P.*, 555 F.3d 906, 908 (10th Cir. 2009) (brackets and internal quotation marks omitted).

4

record—and Mr. Brown failed to show that reason was pretext for discrimination. Second, the court concluded that Mr. Brown failed to establish a prima facie case of retaliation, and even if he had, he failed to show pretext. Mr. Brown moved to alter or amend the judgment under Fed. R. Civ. P 59(e), but the court denied the motion, and Mr. Brown appealed.

## II. ANALYSIS

### A. Summary Judgment

"We review summary judgment determinations de novo, applying the same standards as the district court. At this stage of the litigation, we view facts in the light most favorable to the non-moving party and draw all reasonable inferences in [his] favor." *DeWitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1306 (10th Cir. 2017) (ellipsis and internal quotation marks omitted). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

### B. Title VII Claims

Where, as here, Title VII claims are based on circumstantial evidence, we employ the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Singh v. Cordle*, 936 F.3d 1022, 1037 (10th Cir. 2019) (discrimination); *Hansen v. SkyWest Airlines*, 844 F.3d 914, 925 (10th Cir. 2016) (retaliation). "Under the *McDonnell Douglas* framework, a plaintiff must first raise a genuine issue of material fact on each element of the prima facie case . . . ." *Bekkem v. Wilkie*, 915 F.3d 1258, 1267 (10th Cir. 2019) (internal quotation marks omitted).

5

"The burden then shifts to the employer to offer a legitimate nondiscriminatory reason for its employment decision." *Id.* (internal quotation marks omitted). If the employer satisfies its burden, the plaintiff must then "show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e., unworthy of belief." *Id.* (internal quotation marks omitted).

### 1. Discrimination

To establish a prima facie case of discrimination, Mr. Brown had to show: "(1) [he] belongs to a protected class; (2) [he] applied and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, [he] was rejected; and (4) after plaintiff's rejection, the position remained open and the employer continued to seek applicants from persons of [his] qualifications." *Fischer v. Forestwood Co.*, 525 F.3d 972, 982-83 (10th Cir. 2008).

The school district principally challenged the second element, asserting he was unqualified. The district court rejected that argument and concluded that Mr. Brown established a prima facie case. Nonetheless, the court determined that the school district gave a legitimate, non-discriminatory reason for refusing to rehire him: his employment record with the school district, specifically, his poor past performance evaluations and the 1989 investigation into his misconduct in making sexually inappropriate comments to students. The court thus turned to pretext and found none. The court's thorough and cogent analysis examined the record and concluded there

6

was no evidence suggesting the school district's rationale for refusing to rehire Mr. Brown was unworthy of belief.

Assuming without deciding that Mr. Brown established his prima facie case of discrimination, we agree with the district court that he failed to show pretext. "A plaintiff shows pretext by demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007) (internal quotation marks omitted). "The relevant inquiry is not whether [the employer's] proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1138 (10th Cir. 2004) (brackets and internal quotation marks omitted). "Mere conjecture that the employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Bekkem*, 915 F.3d at 1268 (internal quotation marks omitted).

Mr. Brown contends the school district could not have honestly believed its rationale for not rehiring him because it "blindly rejected" his application after he successfully navigated two interviews and was deemed eligible for employment. Aplt. Br. at 14. He says it was not until after the interviews that Ms. Nolan "blindly" applied the no-rehire policy from 2001 based on information provided by her

7

predecessor, Ms. King, thereby demonstrating that she failed to make a "reasonably informed and considered decision." *Id.* at 19. But rather than ask whether the school district's decision was wise, fair, correct, or informed, the question is whether Mr. Brown can point to evidence suggesting that the nondiscriminatory rationale for the decision is unworthy of belief. He contends we should doubt the proffered rationale because the school district reversed course and refused to rehire him after finding him eligible for employment through the interview process. But the undisputed evidence shows that neither Dr. Harrington nor Ms. Marstall knew he was ineligible for employment when they interviewed him. Consequently, any change of course here does not suggest pretext.

Mr. Brown also cites his 16 years of employment with the school district, 7 of which followed his 1989 sexual misconduct investigation. He appears to suggest that his long tenure at the school district casts doubt on its reason for refusing to rehire him. But he does not dispute his performance problems during that time, including that he was investigated for making inappropriate sexual comments. Nor does he dispute evidence of his poor performance, including a reprimand for insubordination and evaluations expressing concerns with his professionalism, communication skills, and inappropriate comments made to students, Aplt. App., Vol. 1 at 35, ¶¶ 11-13 (Mot. for Summ. J.); *id.*, Vol. 2 at 292, ¶¶ 11-13 (Resp. to Mot. for Summ. J.); *see also id.*, Vol. 1 at 231-35 (Brown Depo. Nov. 2, 2010). He also does not dispute evidence that a principal requested that he be transferred to a different school so students could have a physical education program that met their needs. *See id.*, Vol.

8

1 at 36, ¶ 16 (Mot. for Summ. J.); *id.*, Vol. 2 at 292, ¶ 16 (Resp. to Mot. for Summ. J.); *see also id.*, Vol. 1 at 199 (written transfer request). As the district court recognized, this evidence supports the school district's rationale for refusing to rehire him. Because Mr. Brown cites no evidence suggesting otherwise, he fails to show a factual issue on pretext, and the school district was entitled to summary judgment.

    2. *Retaliation*

"To state a prima facie Title VII retaliation claim, a plaintiff must show (1) that [he] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Bekkem*, 915 F.3d at 1267 (internal quotation marks omitted).

The district court determined that Mr. Brown satisfied the first two elements because he claimed to engage in protected activity by filing his original lawsuit in 1991 and suffered adverse action in 2016 when the school district adhered to its no-rehire decision. But the court concluded that Mr. Brown failed to satisfy the third element because there was no causal connection between the 1991 lawsuit and the adverse action in 2016. As the court recognized, "[i]f the protected conduct is closely followed by the adverse action, courts have often inferred a causal connection. However, a three-month gap between protected activity and an adverse action is too long to support an inference of causation on its own," *id.* at 1271 (internal quotation marks omitted).

9

Here, 25 years separated the 1991 lawsuit and the alleged adverse action in 2016. The district court thus concluded it could not infer a retaliatory motive based on temporal proximity. The court also determined there was no other evidence to establish causation. Further, even if he had established a prima facie case, Mr. Brown failed to show the school district's proffered reason for refusing to rehire him was pretext for retaliation. The court noted that he remained employed by the school district for several years after he brought the 1991 lawsuit, and there was evidence that the district had rehired other employees after they, too, engaged in protected activity.

The only reference in Mr. Brown's opening brief to his retaliation claim is a cursory statement on the first page. *See* Aplt. Br. at 1. The rest of his arguments contest the district court's conclusion that he failed to show pretext. But these are the same pretext arguments he advanced in support of his discrimination claim. Although it is unclear whether Mr. Brown intended to apply these pretext arguments to his retaliation claim, he offers nothing to contest the district court's conclusion that he failed to establish a prima facie case of retaliation. That waiver is fatal. We affirm the grant of summary judgment. *See Shook v. Bd. of Cty. Comm'rs*, 543 F.3d 597, 613 n.7 (10th Cir. 2008) ("[W]here a district court's disposition rests on alternative and adequate grounds, a party who, in challenging that disposition, only argues that one alternative is erroneous necessarily loses because the second alternative stands as an independent and adequate basis, regardless of the concerns of the first alternative.").

10

C. *Motion to Alter or Amend the Judgment*

Finally, we consider the denial of Mr. Brown's motion to alter or amend the judgment under Fed. R. Civ. P. 59(e). "The purpose of a Rule 59(e) motion is to correct manifest errors of law or to present newly discovered evidence." *Monge v. RG Petro-Machinery (Grp.) Co. Ltd.*, 701 F.3d 598, 611 (10th Cir. 2012) (brackets and internal quotation marks omitted). Although a Rule 59(e) motion "is appropriate where the court has misapprehended the facts . . . or the controlling law," "[i]t is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). "We review the denial of a Rule 59(e) motion to alter or amend a judgment for abuse of discretion. A district court abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *Monge*, 701 F.3d at 610-11 (citation and internal quotation marks omitted).

Mr. Brown contends the district court erred in concluding that he failed to show evidence of pretext. His disjointed argument is that the court failed to consider evidence that Ms. Nolan did not know he was ineligible for rehire until she learned of the no-rehire decision from Ms. King, at which point she informed Superintendent Anderson but did not reconsider the decision, demonstrating a lack of good faith. Mr. Brown previously raised this issue by asserting Ms. Nolan "blindly" applied the no-rehire decision without reconsidering it. Aplt. Br. at 14; *see also* Aplt. App., Vol. 2 at 307-09 (Resp. to Mot. for Summ. J., raising the issue). The district court had

11

already rejected that argument and did not abuse its discretion in denying the Rule 59(e) motion.

## III.  CONCLUSION

We affirm the district court's judgment.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge